## YANT *et al.* v. BROOKS *et al.*

1. **Elections:** BRIDGES. Under the statute the board of supervisors have no power to submit a proposition to raise money by taxation and appropriate the same in the construction of bridges, at a *special* election. Such propositions can be submitted only at a *general* election.

   *Argu.* 1. BOARD OF SUPERVISORS: POWERS. It was the design of the legislature in the enactment of article II, chapter 22 of the Revision of 1860, to substitute the board of supervisors for the county judge, and confer upon said board all the powers and duties relating to the management of the affairs of the county and the government thereof, before that time devolving upon said judge.

   2. COUNTY JUDGE: ELECTION. Since the enactment of article II, chapter 22, Revision of 1860, the county judge has not been invested with power to submit to the voters of the county any question in relation to the affairs of the county.

   3. CONSTRUCTION: REPEAL. While the repeal of a statute by implication is not favored by the courts, the court will in the construction of a statute take into view the general system of legislation upon the subject matter.

   4. BRIDGES: AID TO CONSTRUCT. From the power to construct bridges, conferred upon the board of supervisors, is necessarily implied the power to *aid* in their construction.

*Appeal from Polk District Court.*

## WEDNESDAY, JUNE 21.

PLAINTIFFS are voters and tax payers of Polk county, and the defendants constitute the board of supervisors of said county. At a special meeting of said board held on the 5th of April, 1865, in accordance with a petition duly signed by many citizens of the county, it was ordered, that divers propositions should be submitted to the voters of the county at a *special election* to be held on the 15th of May next thereafter, and among others, the question whether the county should appropriate fifteen thousand dollars to aid in the construction of a bridge across the Des Moines river, on Walnut street in the city of Des Moines; and a like sum for each of two other bridges therein named. The election was accordingly held, a majority of the votes cast were in favor of each of said propositions (the electors

having voted upon them separately.) The board of supervisors, after a proper canvass of the returns, so declared and entered the result in the proper minute book, &c.

The object of this proceeding is to have declared invalid all said orders of the board in relation to said vote, and to restrain and enjoin them from making any appropriation, levying any tax, or drawing any money under or by virtue of said pretended vote.

On the hearing in the court below, the injunction was refused and plaintiffs appeal.

*Polk & Hubbell* for the appellants.

*John Mitchell,* and *Withrow & Smith* for the appellees.

WRIGHT, Ch. J. — At the special election ordered by the board, the question of appropriating thirty thousand dollars to aid in the construction of the "Des Moines Valley Railroad" was also submitted and decided affirmatively. The court below sustained the prayer of the•petition so far as to enjoin this appropriation and all proceedings thereunder. From this order there has been no appeal. Our present inquiries are to be confined, therefore, alone to the validity of the orders of the board of supervisors and the election held thereunder, so far as they relate to the several bridges therein named, and the propositions to raise a tax to pay the proposed appropriations.

And the first and main question made by the appellants

1. ELEC-   is, that the supervisors had no power to submit
TIONS:
bridges.   these questions at a *special election,* but that this could only be done at a *general election.* That the point made may be the better understood, a brief reference to the several provisions of the statute becomes necessary.

By the provisions of the Code of 1851 (ch. 15; Rev., ch. 22), it is declared that the *county judge* may submit to the people of his county at any *general election, or at a*

*special one called for that purpose,* the question whether the county will *construct,* or *aid to construct,* any bridge which may call for an extraordinary expenditure. (Rev., § 250, Code, § 114.) Article 11, chapter 22 of the Revision, provides for the creation of a board of supervisors in the several counties, defines their duties and the duties of certain other county officers. The first section declares "that each organized county shall be a body politic, * * * with such powers and immunities as shall be established by law." The board of supervisors, at any lawful meeting, have the powers prescribed in section 11 of said article (Rev., § 312), and among others the following: "To have the care and management of the property and business of the county in all cases where no other provision shall be made;" "to provide for the erection of all bridges which may be necessary, and which the public convenience may require within their respective counties, and keep the same in repair." And then follows this provision: "It shall not be competent for said board of supervisors to order the erection of a court house, jail, poor house, nor other public building or bridge, nor the purchase of real estate for county purposes, when the probable cost will exceed two thousand dollars, until a proposition therefor shall have been first submitted to the legal voters of the county, and voted for by a majority of all voting for and against such proposition, at a *general election;* notice of the same being given," &c. Section 324 provides, that "after the taking effect of this act, neither the county judge nor County Court shall have or exercise any of the powers hereby conferred upon the board of supervisors," &c. By the next section it is declared, that "in all cases where the powers hereby conferred upon said board have heretofore been by law exercised by the county judge, County Court, or other county officers, the said supervisors shall conduct their proceedings under said powers in the same way and manner, as nearly as may be, as is now provided by law in

such cases for the proceedings of said county judge, County Court and county officers, provided they are not inconsistent with the provisions of this act." The last section (326) provides, that " all acts and parts of acts heretofore enacted, and which are inconsistent with this act, are hereby repealed."

By an act passed at the same session of the General Assembly, entitled, " An act to conform existing laws to the change made in the system of county government and organization" (art. 13, chap. 22, Revision), it is declared : " That all laws which may be in force at the time of the taking effect of this act, devolving any jurisdiction or powers on county judges, which said jurisdiction or powers are conferred on the county board of supervisors by an act of the present General Assembly, entitled, ' An act creating a board of county supervisors, defining their duties and the duties of certain county officers,' shall be held to apply to and devolve such jurisdiction and powers upon the said county board of supervisors in the same manner, and to the same extent, as though the words ' county board of supervisors ' occurred in said laws instead of the words ' county judge.' "

From these several provisions a few propositions may be stated, as to which there can be no room for controversy.

*Argu.* 1.
BOARD OF
SUPER-
VISORS.

And *first*, it was the intention of the legislature to make a complete and radical change in the board or officers having the management or control of the county business or government. In other words, it was the design to substitute the board of supervisors for the county judge, and confer upon them, so far as relates to the management of the affairs of the county and the government thereof, all the powers and duties before that time devolving upon him. Following this, as a necessary deduction, is the proposition that the county judge has

*Argu.* 2.
COUNTY
JUDGE:
election.

Yant v. Brooks.

no power to submit to the voters of the county any ques-
tion in relation to the affairs of the county, but this duty
and right belongs exclusively to the supervisors. And
this power is to be exercised in the manner pointed out in
the statute, and not otherwise.

The power then being with the supervisors, the question
is how and when it is competent for them to submit such
propositions. Appellants insist that all propositions to
*construct* or *aid* to construct a bridge or bridges, must be
submitted at a *general election*. The appellees on the other
hand claim that section 250 of the Revision authorizes the
submission of the question whether the county *will con-
struct* or *aid to construct* any bridge, at a general or *special
election;* that subdivision 23, § 312, ch. 22 only requires
the submission at a *general* election where the object is to
order the *erection of a bridge;* that to *erect* or *construct*, and
*aid* to construct are or may be distinct in their nature;
that to do the *whole* may and would involve a greater
expenditure than to aid or do a *part*, and hence one can
only be done at a *general* election while the other may be
done at a *special* election, that the two statutes are not
necessarily in conflict or inconsistent, and that it is there-
fore our duty to so construe them if possible, as that both
may stand.

We acknowledge the full force of the proposition, that
*Argu. 3.*
CONSTRUC-
TION:
repeal.
the repeal of a statute by implication is not
favored by the courts. The doctrine upon this
subject we had occasion to recognize in *Casey* v.
*Harned*, 5 Iowa, 1, and with what is there said we are
content to abide. And see *Ament* v. *Humphrey*, 3 G.
Greene, 255; *United States* v. *Boyd*, 5 How. U. S., 37. It
is a proposition of equal weight, that a court should, in the
construction of a statute, take into view the general system
of legislation upon the subject matter, bringing all into
review, whether repealed or unrepealed. (*Mayo* v. *Boyd*, 3

Mass. 13; *The People ex rel.* v. *Utica Ins. Co.*, 15 Johns. 380; *Bruce* v. *Schuyler et al.*, 4 Gilm., 221, 12 N. H., 284.)

Now we have already said that the legislature intended to provide for a new system of county government and to substitute another tribunal or board with the powers in the new act prescribed. This is manifest from the first section of the act creating the board of supervisors, which endows each county with the powers of a body corporate or politic. Not only so, but we know that it was the design and intention to abandon the old or former system of county governments and introduce a system deemed to be better calculated to promote the prosperity of the counties and protect the rights of the people therein. This appears from the several acts before referred to, as well as the whole history of our legislation on the subject. One evil design to be remedied, was to prevent the submission of questions involving the expenditure of large sums of money, to the people at a *special* election. From time to time we have abolished special elections, or elections to be held at other times than when all our officers for the year were to be chosen. The object was to obtain a full and fair expression of public sentiment upon all matters affecting the public welfare. It was known and felt that at these special elections the vote was apt to be partial; that an expression of opinion from all the voters of the county was not so likely to be obtained, and hence the proposed change, the necessity of which must be admitted by the experience of all.

Aside from this, however, we think the position of appellants is sustained by the language no less than by the reason of the statute. Under the powers to *construct*, it is admitted that there exists the power to *aid* to construct. If, then, the supervisors have the power to *aid* to construct, how or when is *such* a proposition to be submitted? At a *special* election? *Cer-*

*Argu. 4.*
BRIDGES:
aid to con-
struct.

*tainly* not. For the statute from which the power to *aid* is implied, expressly says that the vote cannot be taken at any other than a *general* election. If it is said that the power to *aid* is derived not by *implication*, but from the former statute (§ 114 of the Code, and § 250 of the Rev.), then the difficulty is that this section also provides that a proposition to *construct* may be submitted at a *special* election. Not only so, but this view loses sight of the repealing clause of the new statute, and of the changes inaugurated in the system of county government. Then again, where would this argument lead us? We are looking at this question now as one of power. If a proposition to *aid* may be submitted at a *special* election, while one to construct or do the whole thing must be at a *general* election, then the evil designed to be remedied would remain in all its force. For though the construction might cost $30,000, which the county proposed to aid to the extent of $29,000, it could be done at a *special* election, whereas, if the whole $30,000 was required, it must be done alone at a *general* election. And so it would for ever so great a sum and however great the proportion to be appropriated by the county. We cannot believe that the remedy was designed to be thus partial or limited. Our opinion is, that the legislature intended that all these questions should be submitted at a general election; at a time when all the voters would be more likely to be at the polls, and when there would be less probability of foisting upon the people, by interested parties, a debt and taxation against their wishes and interest. And so concluding upon the first question presented in this discussion, it becomes unnecessary to consider the other objections made by appellants against this vote.

Reversed.