BELL v. FOUTCH *et al.*

2t 119<br>106 47<br>106 469

1. **Bridges:** POWER OF THE BOARD OF SUPERVISORS. The board of supervisors is invested with power to erect all bridges in the county which may be necessary and which the public convenience may require; and may levy a tax for that purpose not exceeding three mills on the dollar.

2. —— IN INCORPORATED TOWNS OR CITIES. Section 1097 of the Revision of 1860 does not oust the counties of the right to erect free bridges across rivers on public highways, within the limits of incorporated towns or cities.

3. —— AID. The county has power to aid in the construction of *free* bridges, erected with the sanction of the proper authorities, for public use, upon public lines of travel, either within or without incorporated towns or cities.

4. —— SWAMP LAND MONEYS: RESTRICTION. The appropriation of seven thousand dollars out of the swamp land moneys belonging to the county, to aid in the construction of a bridge, by authority of a vote of the electors of the county, imposes no restriction upon the power of the board to make an additional appropriation, under subd. 23, § 312, Rev. 1860.

5. —— NAVIGABLE RIVER. Whether section 52, *et seq.,* Rev. 1860, applies to free bridges constructed by the public, and whether a party having no special interest in the navigation of the river, can complain of its destruction by the erection of a bridge, *query.*

*Appeal from Polk District Court.*

THURSDAY, JUNE 28.

BRIDGES: POWER OF COUNTY AND CITY IN RESPECT THERETO, ETC.—The plaintiffs are citizens and tax payers

of Polk county, residing outside of the city of Des Moines. They file the present petition to enjoin the defendants (who consitute the board of supervisors of Polk county, the clerk of the board and the county treasurer being also made parties) from paying over an appropriation of $2,000 out of the *bridge fund*, and praying that the order making such appropriation be set aside and canceled.

From the pleadings and exhibits the following facts appear:

On the 6th day of June, 1864, the board of supervisors of Polk county ordered "the question to be submitted at the next election whether they would appropriate the sum of $7,000 out of the *swamp land funds* to aid in erecting a *free* bridge across the Des Moines river, at the foot of Walnut street (west side), *provided* the citizens will appropriate (raise) an equal amount, to be expended under direction of a committee appointed by this board and the city council" of Des Moines.

This question was afterward accordingly submitted to a vote of the county, and was carried.

Three persons were afterward appointed by the board "to act as a committee in the construction" of the bridge in question, and the city council was requested, on its part, to appoint a committee, consisting of the same persons appointed by the board of supervisors.

Accordingly, the city council of Des Moines, by a resolution reciting the action of the board of supervisors in the premises, appointed, to act in behalf the city, the same persons who had before been appointed by the board, viz.: S. F. Spofford, Tho. F. Withrow and Frank Laird, esquires.

On the 17th day of October, 1865, the board of supervisors adopted the following *resolution* — this being the one to which the present action relates:

"*Resolved*, That there be and is hereby appropriated the sum of $2,000, out of the *bridge fund* of 1865, to aid

Bell v. Foutch.

in the erection of a free bridge across the Des Moines river at the foot of Walnut street, in the city of Des Moines (west side), whenever the citizens of Polk county shall raise, by voluntary subscription or otherwise, the sum of $9,000, to be used for the same purpose; which was adopted. *Yeas*, 16; *Nays*, none."

On the 23d day of March, 1866, Laird and Spofford, the committee on the part of the board of supervisors, and on the part of the city council, as parties of the first part, and J. M. Neafie *et al.*, parties of the second part, entered into a contract by which the parties of the second part, as contractors, agree to build a bridge across the Des Moines river at the foot of Walnut street 605 feet long and 16 feet wide in the clear, with sidewalks the whole length of the bridge, for the price of $26,000, to be completed October 6, 1866; the parties of the first part making themselves liable for $20,000 in their individual capacity; the remaining $6,000 the parties of the first part are to try to raise by private subscription, or by taxation if voted by the people; but for this $6,000, the contractors are to look to the bridge alone and their lien on it for security and payment, reserving possession until paid; if not paid within six months after completion of bridge, the contract provides that they may sell the same at public sale by giving public notice as in case of sheriff's sales, or may remove the same.

Nine thousand dollars in cash have been raised by private subscription; and this amount is in the hands of the said bridge committee of the supervisors and city council, and has by this committee been placed on deposit in the First National Bank, Des Moines, to their credit and subject to their control.

The said bridge committee on the part of the county and city have petitioned the District Court for an order giving them authority to proceed with the erection of the

said free bridge. Rev. § 1252, *et seq.* This petition has not yet been acted upon by the District Court.

The application for a temporary injunction was made upon the petition, answer and certain exhibits and other agreed facts, to the Hon. CHAS. C. NOURSE, Judge of the 5th Judicial District, and the same was granted, only in a modified form.

The order of his honor, Judge NOURSE, made on the 30th day of May, 1866, was as follows:

"Let the injunction issue, in this case, upon the execution, by plaintiffs, of a bond in the penal sum of one thousand dollars, conditioned as required by law; which shall in terms enjoin defendants from issuing, or causing to be issued, any warrants for, or paying or causing to be paid the $2,000 appropriated out of the bridge fund to said bridge committee, or any other person, until after the determination of the application of said committee for authority to construct a bridge over the Des Moines river, now pending in the District Court of Polk county; and further enjoining said board from paying, or causing to be paid, said $2,000, or any other or further sum, except the $7,000 out of the swamp land funds, unless authorized by a vote of the people of Polk county so to do, unless said board shall have full security that said bridge shall, with the aid of said $2,000, be wholly completed as a free bridge to the use of the public, free from all private rights or mechanics' liens thereon, unless otherwise ordered by the court.

CHARLES C. NOURSE,
*Judge of the Fifth Judicial District.*"

The injunction, except in the above modified form, was refused, and the plaintiffs excepted; and now appeal, insisting that the injunction should have been absolute and unconditional.

*Polk & Hubbell* for the appellants.

I. No appropriation can be made by the supervisors out of any fund belonging to the county, to aid in building bridges on the streets in the city of Des Moines, because 1st. They have no powers only such as the statute gives. Ang. on Corp., § 256; *Hodge* v. *City of Buffalo*, 2 Denio, 110; *New London* v. *Brainard*, 22 Conn., 553; *Abendroth* v. *Greenwich*, 29 Id., 356; *Clark* v. *Des Moines*, 20 Iowa, 455. 2d. The statute gives them no control over the streets of a city whatever, and imposes no obligation on them to keep the same in repair. Rev., 1860, §§ 327, 819; and in regard to roads generally. *State* v. *Willston et al.*, 31 Vt., 153, § 158; *People* v. *Finger*, 24 Barb., 341, § 347; *Meadville* v. *Erie Canal Company*, 18 Penn., 66, § 68; *Borough of Uniontown* v. *Commonwealth, &c.*, 34 Penn., 293; *The Common Council* v. *McClure*, 2 Ired., 147; *Smoot* v. *Mayor, &c.*, 11 Humph. (Tenn.), 217; *Pope* v. *Commissioners, &c.*, 12 Rich. (S. C.), 407; *State* v. *Jones*, 18 Texas, 874; *Gilman* v. *County of Contra Costa*, 5 Cal., 426; *Clark* v. *Des Moines*; *Abendroth* v. *Greenwich*, 29 Conn., 356; *Bristol* v. *Chicago*, 21 Ill., 605; *Wheeler* v. *Troy*, 20 N. H., 77; *State* v. *Clark*, 1 Dutch. (N. J.), 54. 3d. The statutes of the State imposes this burden upon the city. Rev., 1860, § 1097. 4th. The fee of the streets is in the city. Rev., 1860, § 1021.

II. The Des Moines river is a navigable stream, and no steps have been taken by the parties proposing to build said bridge to obtain authority so to do. 9 U. S. Stat. at Large, 78; Rev., 1860, § 1252, &c., 1257. See also *Commonwealth* v. *Charleston*, 1 Pick., 180, § 188; *Commonwealth* v. *Combs*, 2 Mass., 492; *Jones* v. *Andover*, 9 Pick., 146.

III. If the stream was not navigable, certain steps must be taken before the supervisors can build the bridge. These have not been taken. Rev. 1860, § 1262, &c.

IV. The supervisors heretofore appropriated, or attempted to appropriate seven thousand dollars to aid in erecting said bridge, and in making this appropriation they exceeded their authority. Rev. 1860, § 312, subd. 23.

V. The money attempted to be appropriated is to aid in a private enterprise, and the board had no authority to make such appropriation. See contract attached to amended petition. *Clark* y. *Des Moines*, *supra*.

*John Mitchell* and *J. M. Dorr* for the appellee.

I. The board of supervisors have the power to erect all bridges necessary for the public convenience within their respective counties. Rev. 1860, § 311, subd. 18.

II. The township trustees may also, for certain purposes, levy a bridge tax. Acts of 1862, ch. 163, § 1.

III. The board of supervisors are authorized to levy a bridge tax for the special purpose of building bridges. Rev. 1860, § 711, subd. 9; Acts 1866, ch.    , p. 80, § 1.

IV. The board may appropriate two thousand dollars to build a bridge without being petitioned therefor, and without submitting the same to a vote of the electors of the county at a general election. Acts 1866, p. 80, § 2; Rev. 1860, § 311, subd. 23.

Section 1262, of the Revision, can only apply where it is sought to make the county liable in the contract, and cannot apply to the board of supervisors in cases of appropriation only, and is also repealed by the act creating the board of supervisors. Rev. 1860, § 326.

V. The bridge tax is levied on all the property in the county liable to be taxed, collected by the treasurer, and under the control of the board of supervisors.

VI. The city council have no power to levy a tax to build a bridge, but only have the care, supervision and control of all public highways, bridges, streets, alleys, public squares and commons within the city. Rev. 1860, § 1091; Acts of 1864, ch. 25, § 3.

VII. The city of Des Moines is a road district, and has no greater power than any other road district in the county in regard to roads and bridges. *Rusch* v. *City of Davenport*, 6 Iowa, 449; *White* v. *Road District No.* 1, 9 Id., 202; *Wilson & Gustin* v. *Jefferson County*, 13 Id., 182; Rev., 1860, § 891; City Ordinances of Des Moines, p. 63, § 31.

VIII. Every street in a city is a highway. See *Common Council of Indianapolis* v. *Croas*, 7 Ind., 9.

IX. Every bridge is a part of the public highway. Rev. 1860, § 822.

X. The board of supervisors have the general supervision over the highways in the county. Rev. 1860, § 819.

DILLON, J. — The important questions made in this case open into an interesting field of legal inquiry concerning the respective powers and jurisdictions of the county and city in respect to highways, streets and bridges. This field has been well explored by counsel whose researches have materially abridged our labors. The questions are essentially statutory, and adjudged cases in other States afford little aid, except to teach and illustrate the principles which should be applied in the construction of our various statute provisions upon the subject of roads and bridges, and the rights and powers of municipal corporations in respect thereto.

*1. BRIDGES: power of board of supervisors.*

The contemplated bridge is to be a *free* and not a toll-bridge. It is designed to cross the Des Moines river, a large stream, several hundred miles in length, bisecting the county of Polk. The city of Des Moines also lies on

either side of the river. To span the stream requires a structure six hundred and five feet in length, and one which, to be securely built, will involve the expenditure of several thousand dollars. The proposed bridge will, according to the contract, cost the sum of $26,000. It is not, strictly speaking, a bridge *on the streets* of the city, but a bridge at the *foot* of Walnut street. This street, on the west side (the original town), terminates at the river. On the east side and directly opposite, the same street, or a street of the same name, also terminates at the river. It is alleged in the answer, and presumed to be substantially true, that Walnut "is the main street and most public highway through the city, east and west, and that the bridge, when completed, will be the one over which most, if not all, the travel east and west will pass, on the State and county roads leading east and west through said city."

In other words, the street connects with State or county roads; and the bridge will accommodate, not simply the citizens of Des Moines, but, being upon or connecting with lines of highways running into and through the county, it will accommodate all the citizens of the county, and the traveling public at large.

These circumstances show that the benefits of the bridge in question will not alone be enjoyed by the city, and in view of our statutes on the subject of roads and bridges, these facts seemed necessary to be stated, that the questions decided should be properly understood.

The present case is brought to test the legality of the appropriation of $2,000, by the board of supervisors, out of the bridge fund, and the plaintiff's argument against its legality is, in substance, this: That the fee of the streets is in the city; that the city authorities have the sole control of the streets of the city; that the county has no power over the streets, and no duties in respect to them; in other words, the county has no right to build a bridge of any

character *inside* the limits of the municipal corporation, and therefore no power to aid others in building such a bridge. Some of these propositions may be well founded, and yet they would not authorize the conclusion contended for. We remark that the city of Des Moines is organized under the general incorporation act, as a city of the second class. Rev., ch. 51.

It is only necessary to discuss the question whether, under the general statutes of the State, taken in connection with the general incorporation act just referred to, the county authorities have the power to erect or aid in the erection of a bridge over the Des Moines river, at the point above described, *within* the limits of the city corporation. That the county authorities have this power, may be clearly shown by an examination of the statute.

No enlightened State will fail to provide a mode or system for the laying out, improvement, and keeping in repair, highways and bridges. What system has been adopted in this State? This it is necessary briefly to examine. The State, instead of undertaking this work directly, has committed it to various local or subordinate auxiliaries of government. And the provisions in respect to roads and in respect to bridges, are not in all respects the same. The county authorities alone have the power to establish highways and are invested with the general supervision thereof, including bridges. Rev. §§ 819–823; 312, 327, subd. 13, 17.

For ordinary road and ordinary bridge purposes the county is, as to their construction, amendment and repair, divided into road districts, each with its supervisor, with power to require a certain limited amount of work from all the able-bodied residents, and with power in the township trustees to levy a township road and bridge tax, to a limited amount, payable partly in money and partly in labor; the money thus realized to be expended *in the*

*particular road district from which it is collected and not else-where.* Rev., ch. 46, art. 3, Acts of 1862, 190.

Now this is the provision made by law for *ordinary* road and bridge purposes. But if this were all, it is evident that the law would be very inadequate, so far as concerns bridges requiring an extraordinary expenditure to construct or repair them. The State is traversed by numerous water-courses or streams of considerable size, of which the Des Moines is one.

Now, if the above were the only provisions of the statute, the particular road district on the river, in which a bridge was needed, would have to bear the whole expense of its construction, or else leave the river unbridged. This the law makers have anticipated and carefully provided for, as we shall now proceed to show, making *bridges essentially a matter pertaining to the duties of the county organization.*

Thus the county supervisors have express power " To provide for the erection of *all bridges* which may be necessary, and which the public convenience may require *within their respective counties* and to keep the same in repair." Rev., §§ 312, subd., 18 ; 313 (last part) 327, 819.

To enable the county to execute this duty, the statute (Rev., ch. 45, § 710) provides " that the board of supervisors in *each* county, shall annually levy the following taxes upon the assessed value of the *taxable property of the county :* 1. For State revenue, &c.   *   *   *   *   4. *For making and repairing bridges, not more than one mill on the dollar, whenever the board of supervisors shall deem it necessary.*" This tax of one mill was found to be inadequate in many of the counties traversed by large streams, and hence the power was recently enlarged so as to give the right to levy a *three* mill bridge tax. Acts 1866, p. 80.

No such provision is made for the levy by the county of a *county road* tax, for the reason it may be supposed, that

the powers above referred to, conferred upon the township trustees, would be sufficient to meet the public wants with respect to roads. It is thus seen that special provision is made to enable boards of supervisors to " erect *all* bridges which may be necessary, and which the public convenience may require, within their respective counties." Rev., § 312.

Under the above provisions, unless there is something in the act under which the city of Des Moines is organized, which takes cities and towns out of the operation of those provisions, it is undeniable that the county would have the power to construct a bridge over the Des Moines at the place in question; and if it has this power it would have the power to *aid* others in constructing a *free* bridge, especially if it did not part with its supervisory power over it when constructed. See *Yant* v. *Brooks*, 19 Iowa, 87.

And here the plaintiffs insist that the county is deprived of this power within the city limits, by section 1097 of the Revision (section 67 of the towns and cities act), which enacts that "the city council shall have the care, supervision and control of *all* public highways, *bridges*, streets, alleys, public squares and commons *within the city*, and shall cause the same to be kept open and in repair, and free from nuisances."

2. —— in incorporated towns or cities.

We do not think a fair construction of this general language requires us to hold that it ousts the county of the right, which we have shown it would otherwise possess, to bridge the Des Moines at the place in question.

We briefly state the reasons for this opinion:

1. Many bridges in a city are purely local, across gutters or small streams, such, for example, as Bird's run in Des Moines, and not connected with the public highways of the county, and to these this language may properly apply.

2. It may be, though we do not rule the point, that

though the county shall build the bridge, yet this language will charge the duty on the city to keep it in repair, and for that purpose gives the city authorities supervision and control over it.

3. But the chief, and it seems to our mind a most satisfactory, reason for the above opinion, consists in the fact that the county bridge tax; provided for by section 710 of the Revision, is levied upon all the taxable property of the county, upon that *within* the city the same as upon that without the city.

And the bridge fund for 1865, out of which the $2,000 appropriation in question was made, was raised, as it must be presumed and indeed is not disputed, from the taxable property of the city as well as from that of the county outside of the city. The burden is equal upon the city and county. Shall we ignore all equitable considerations, and hold that there shall be equality of burden but not of benefit? Shall we adjudge that the city has the capacity, nay, the duty, to pay but not the power to enjoy? The law is plain that the county may levy a bridge tax upon the taxable property in the city; indeed if it levies such a tax at all, it *must* levy it upon the property of the *whole* county including the city. Rev., § 710.

The law thus obliging the citizens of Des Moines to pay a *bridge* tax, shall we hold them utterly disabled from participating in the advantages which are presumed to be the consideration for the tax? Such a construction of section 1097 would be wholly unwarrantable — the language not imperatively requiring it.

4. A county may be able to construct a bridge inside a corporation, over a stream, when the town or municipal corporation, though willing, would not be able to do so. If appellants' doctrine is correct, the county cannot construct a bridge across a river, though it construct it on the

highway or road, if the place where the river is to be bridged is within the limits of a town or city. The practical effect of this doctrine would be bad, and this concurs with the other considerations named in leading us to reject it as unsound.

And in this case it is to be observed that the city and county are acting in concert with each other, and with public spirited citizens desirous of further conveniences for the passage of the river which divides the county and the city into two parts. It is true that the bridge will connect one part of Walnut street with another, but though this is a *street*, a citizen of the county or the State has just the same rights in it as a citizen of Des Moines — the right of way or passage, a right which the city cannot deny or abridge, or alien. The city has the bare fee, but it is in trust for the public; and the trustee cannot alien the trust property, or pervert it to other than the dedicated uses.

If we should be mistaken in the view above taken, as to the power and right of the county to erect public bridges on public highways *inside* of the city, still we cannot be mistaken in saying that it is a matter of *county* duty to see that bridges across the water-courses of the county are provided for.

If citizens propose to erect a *free* bridge (with the sanction of the authorities) for public use upon a public line 3. — aid. of travel, we cannot regard an appropriation to aid them in so doing as an appropriation of money by the county to an object foreign to its legitimate purposes and functions.

The county of Polk could, on a public highway, bridge the Des Moines, or aid in doing so, just above or just below the city limits. Nobody denies this. But a bridge there would be off the line of travel, and of little use. The county highways connect with the city. The people of the county have occasion to come to and pass through

the city; and, in our opinion, the county authorities have the power to assist, by appropriation from the bridge fund, parties who may wish to erect a free public bridge such as the one now projected.

II. We dispose of the less important points made by the appellants, more briefly. The supervisors, as will be

4. SWAMP LAND MON- EYS: re- striction. seen by the statement, have appropriated $7,000 from the "*swamp land fund*" to aid in erecting this bridge. It is now claimed, that in appropriating $2,000 more out of the *bridge fund*, they exceeded the limits allowed by the statute. Rev., § 312, subd. 23. The people voted the $7,000 out of the swamp land fund as authorized by section 986 of the Revision, amended by act of 1862. Laws 1862, p. 78. By this vote they consented to appropriate $7,000 of *this fund* to the building of the bridge in question. This imposes no restriction upon the power of the supervisors to act under another law (Rev., § 312, subd. 23), and with respect to another fund.

III. It is claimed by the appellants that the Des Moines is a navigable river, and no authority has been obtained

5. — navi- gable river. from the District Court to build said bridge. Rev., § 1252, *et seq.*

If the county here be treated as the builder and owner of the bridge in question, it admits of some doubt whether the statute cited applies to *free* bridges constructed by the *public.* But however this may be, the very judicious order made by the District Court deprives the *plaintiffs* of all ground of complaint on this head, even if it be conceded that they, without showing some *special interest* in the navigation of the river, can make the objection.

IV. Again, it is urged that the $2,000 is appropriated in aid of a *private enterprise*, and the board had no authority to make such an appropriation.

We see no evidence that this is a private enterprise, at least in such a sense as to prevent the board from aiding

in the construction of the bridge. It is *free* and on a line of extensive travel.

The county and city have a committee acting for them in the premises. We cannot regard the appropriation as in the nature of a donation to proprietors of a private bridge, which it may be conceded the county would have no rightful power to make. Nor do we perceive any objection to holding that the county may, if it sees fit, construct, or aid in constructing, a public bridge, on condition that private individuals, or others specially benefited, will contribute to its expense.

The order of the judge as to the terms and time of payment of this $2,000 deprives the appellants of all reasonable ground of complaint, and obviates the effect of the objectionable provisions of the contract respecting the contractors' lien for the $6,000 balance of the contract price of the bridge.

Affirmed.