Starr & Rand v. Board of Supervisors of Des Moines County.

STARR & RAND *et al*. v. THE BOARD OF SUPERVISORS OF
DES MOINES COUNTY.

1. **Contract**: OFFER TO SELL: WHAT AMOUNTS TO ACCEPTANCE BY SUPER-
VISORS. A lease of a certain building, for use as a court-house, entered
into between the county board of supervisors and the owners of said
building, contained the stipulation that, "the county shall have the
privilege of purchasing the property hereby leased at any time during
the existence of the lease, for the sum of $12,000." The board, after-
ward, in accordance with law, ordered the question of purchase of said
building to be submitted to a vote of the people of the county, which
was accordingly done, and their vote regularly given in the affirmative,
and so declared and entered by the board. In an action afterward
brought by the owners of said property to compel the specific perform-
ance of the contract, which, it was claimed, had been made complete by
the aforesaid action of the board and the people, the petition averred the
foregoing facts. *Held*,

   1. That the facts alleged did not constitute a completed contract of
   sale enforceable in a court of equity.

   2. That the effect of the vote of the people was merely to *authorize*,
   not require, the board of supervisors to make the purchase at the
   price stipulated; and that until they should conclude the contract by

accepting the offer pursuant to the authority thus conferred upon them, there was no consummation of the same.

2. **County**: SUBMISSION OF QUESTIONS TO VOTE: FRAUD. In order to avoid, on the ground of fraud, the result of a submission to the voters of the county, of a question involving the purchase of a public building, there must be some showing of artifice to conceal material facts peculiarly within the knowledge of the board of supervisors ordering such submission, and not open to or attainable by others.

3. —— PROPOSITION TO LEVY TAX. A submission by the board of supervisors, to the voters of the county, of a question involving the expenditure of money in the purchase of a public building, is of no effect unless accompanied by a proposition to levy a tax for the payment thereof, and the adoption of the same together with the proposition of expenditure. Rev. 1860, §§ 252, 312, 325, 330.

*Appeal from Des Moines District Court.*

WEDNESDAY, JULY 3.

This is a suit in equity by Starr & Rand, and other citizens and tax payers of Des Moines county, to enjoin the board of supervisors of said county from executing an alleged contract for the purchase of property known as "Mozart Hall," for a court-house for said county; and also to compel the specific performance of an alleged contract for the purchase of property known as "Marion Hall," for the same purpose. There was a demurrer to the petition by defendants, which was sustained by the District Court. The facts averred in the petition can be best stated in connection with the propositions they involve. The plaintiffs appeal.

*Charles H. Phelps* and *J. C. & B. J. Hall* for the appellants.

*Joshua Tracy* for the appellees.

COLE, J.—I. As one ground for an injunction, the plaintiffs allege that the board of supervisors of Des Moines

1 CONTRACT: offer to sell: what amounts to acceptance by supervisors.

county, in June, 1863, leased of Henry W. Starr and E. D. Rand, who were the owners thereof, the property known as "Marion Hall," in the city of Burlington, in said county, for a court-house and offices, for the term of five years from the 24th day of October, 1863, at an annual rent of twelve hundred dollars. In the lease was this agreement: "And it is also further agreed between the parties hereto, that the county shall have the privilege of purchasing the property hereby leased, if they may choose to do so at any time during the existence of the lease, for the sum of twelve thousand dollars." It is then averred that the board of supervisors ordered that the question of purchasing Marion Hall for a court-house, etc., on the terms specified, be submitted to the people of the county, and at the regular general election in October, 1865, it was so submitted, and a majority of the voters voted in favor of such purchase, and it was so declared and entered of record by the board of supervisors; that the same has never been revoked, but remains in full force; that Starr & Rand have, at all times since the result of said vote was known, been ready, willing and anxious to convey said property in accordance with the said contract and vote of the people, upon the defendants' paying the agreed price, and have so notified them, and now tender such conveyance; that the board refuse to complete the purchase or take any action thereon. The plaintiffs charge and claim that the contract of lease, with the privilege of purchase, and the vote of the people aforesaid, make a full and complete contract of sale by Starr & Rand, and purchase by the county; and that the county, being thus supplied with one sufficient court-house, could not legally purchase Mozart Hall for another.

These facts do not constitute a completed contract of sale enforceable in a court of equity; one essential element

is wanting to complete the sale, to wit: the acceptance
of the offer or privilege by the defendants. The agree-
ment contained in the lease amounts to an offer by Starr
& Rand to take that price for the property. The vote of
the people (if legally submitted and taken) *authorized*
the board of supervisors to make the purchase at the price
stipulated; it did not *require* them to so make the pur-
chase. It was in the nature of a special authority to an
agent to conclude a contract; but unless the authority is
exercised, the authority itself does not make a contract.
The defect in the averments of the petition rendering it
vulnerable to the demurrer, is in the want of an allega-
tion that the board concluded the contract by accepting
the offer pursuant to the authority conferred upon them
by the vote of the people. Until the board do exercise
the authority thus given them, by accepting the offer, no
contract is consummated which can be enforced in a court
of equity.

II. The original petition, as filed by the plaintiffs, set up
the lease, agreement and vote as above stated, and also
alleged that the defendants, combining with
others to defraud Starr & Rand and the tax
payers, etc., were about to purchase Mozart
Hall for a court-house, etc., of one J. S. Schramm, without
legal authority, and were about to pay $12,000, illegally,
from the county treasury, therefor. Upon this petition an
injunction was issued and served.

2. COUNTY:
submission of
questions to
vote: fraud.

About one year thereafter, an amended and supplemental
petition was filed, alleging, among other things, that the
defendants had submitted to the people of the county, at
the general election in October, 1866, the proposition to
purchase from said Schramm, Mozart Hall for a court-
house, etc., at $16,000, and a majority had voted in favor
of such purchase. That there was a fraud practiced upon
the people in such submission, in that the said Mozart Hall

would require an expenditure of from $15,000 to $25,000 to fit it for use as a court-house, and no provision was made therefor in the submission, nor were the people advised of the fact by the defendants; that the defendants withheld from the people the fact that the county had one court-house, to wit, Marion Hall, which had been purchased by a vote of the people, and to enforce the contract of purchase, a suit was then pending; that the people never would have voted to purchase Mozart Hall if they had known such facts.

These averments do not amount to such allegations of fraud as will avoid the result of the submission to the people. There must be some showing of artifice to conceal material facts peculiarly within the knowledge of the defendants, and which were not open to or attainable by others, to justify the interference of a court of equity in such case on the ground of fraud. The matters stated were public, and could be as well known to the people and voters as to the defendants. They do not constitute fraud, nor a shadow of fraud. To hold that they did, would be a slander upon the intelligence of the voters of Des Moines county, as well as a violation of the clear rule of equity in such cases.

III. The petition, as amended, also stated in substance, that in the submission of the question to the people for the purchase of Mozart Hall, at the price of $16,000, there was no provision made or proposition submitted for the levy of a tax for the payment of the expenditure; and it was also averred that there was not sufficient money in the treasury to pay the price stipulated.

3. —— proposition to levy tax.

This feature of the petition presents a question which has not yet been passed upon by this court. It will be necessary to state the substance or language of several sections of the Revision, in order to a proper understand-

ing of the point decided. Under our county judge system of managing executive affairs of the county, which was superseded by the supervisor system, in July, 1860, there was no limit upon the discretion or power of the county judge to provide a court-house for his county. He could buy a court-house, or build one, at whatever cost or expense his judgment should deem proper. *The State ex rel. Brooks* v. *Napier County Judge*, 7 Iowa, 425. But when the county judge wished to *borrow* money to aid in the erection of a public building, or to know whether the county would construct, or aid to construct, any road or bridge which might call for an extraordinary expenditure, he was required to submit such questions and others to the vote of the people. Code of 1851, section 114, Revision, sections 250 and 251, provides the manner of submission; and it was further provided (Rev., § 252 [116]): "When a question so submitted involves the borrowing *or expenditure* of money, the proposition of the question must be accompanied by a provision to lay a tax for the payment thereof, in addition to the usual taxes, as directed in the following section, and no vote adopting the question proposed will be of effect unless it adopt the tax also." The next section provides the rate, etc. Subdivision 23 of section 312, which is part of the supervisor act, provides "that it shall not be competent for said board of supervisors to order the erection of a court-house, jail, poor-house, or other building or bridge, nor the purchase of real estate for county purposes, where the probable cost will exceed two thousand dollars, until a proposition therefor has been first submitted to the legal voters of the county, and voted for by a majority of all voting for and against such proposition at a general election." * * * * There is nothing in this section, or in the supervisor act, requiring the proposition to be accompanied by a provision to lay a tax for the payment.

etc. And the only question under this branch of the case is, whether the former provision, as to tax, etc., in relation to submissions by the county judge, is applicable to the board of supervisors in the submission of the question mentioned in subdivision 23 of section 312, *supra*. In our opinion it is applicable, and the board of supervisors must submit the provision for laying the tax, and no vote adopting the question proposed will be of effect, unless it adopt the tax also.

This opinion is based mainly upon the language of the statute. Rev., § 325. "In all cases where the powers hereby conferred upon said board of supervisors, have heretofore been by law exercised by the county judge, county court, or other county officers, the said supervisors shall conduct their proceedings under said powers, in the same way, and manner as nearly as may be, as is now provided by law in such cases for the proceedings of said county judge, county court and county officers, provided they are not inconsistent with this act."

"Sec. 330. That all laws which may be in force at the time of the taking effect of this act, devolving any jurisdiction or powers on county judges, which said jurisdiction or powers are conferred on the county board of supervisors, * * * * * shall be held to apply and devolve said jurisdiction and powers upon the said county board of supervisors, in the same manner and to the same extent as though the words 'county board of supervisors' occurred in said law instead of the words 'county judge.'"

The power of submitting a question of expenditure to the people was formerly exercised by the county judge and is now conferred upon the board of supervisors. Under section 325, *supra*, they should conduct their proceedings in such submission in the same way and manner as provided by law for the county judge, to wit, by submit-

ting the provision for tax with the proposition of expenditure.

By laws in force when the supervisor act was passed, there was devolved upon county judges the jurisdiction and power to submit a question of expenditure to the people ; and by that act the same jurisdiction and powers are conferred on the board of supervisors, and hence, by section 330, *supra*, those laws apply to the board of supervisors in the same manner and to the same extent as they did to county judges.

Unless the provisions as to manner of submission applicable to county judges, are in force as to supervisors, there is no law regulating the manner.   Those provisions are not expressly repealed, nor are they inconsistent with the supervisor act, and they are necessary to the full effectuation of all the provisions of that act.   There can be no doubt but that they apply to the submission of a question for the purchase of real estate for county purposes, by the board of supervisors.   See, as bearing more or less upon this question, in the construction of these sections of the statute, *Yant* v. *Brooks, et al.* (19 Iowa, 87).   For the reasons specified under the third point in this opinion, the judgment of the District Court sustaining the demurrer to plaintiff's petition, as amended, is

Reversed.