Curtis Miller, *et al.*, Appellants, v. G. Merriam, *et al.*

**Building Courthouse:** special election. Where there is available money in the county treasury to pay for a proposed courthouse, it is not necessary to submit a proposition to levy a tax, to the people, and the building allowed by special election may be built from such funds. Code, 303, 309, 310 and 311.

Surplus defined. Where there is a balance in the county fund, after deducting all obligations against it, and thereafter a tax is levied, reasonably estimated to pay future county expenses, such balance is a surplus.

*Appeal from Delaware District Court.*—HON. JOHN J.
NEY, Judge.

THURSDAY, APRIL 4, 1895.

Action in equity to have declared void a special
election held to determine whether a courthouse should
be built, and to authorize the use of certain funds in
building it, and to enjoin the defendants and their suc-
cessors in office from adopting measures to build a
court house, and from using money of the county for
that purpose. There was a hearing on the merits, and
a decree for the defendants. The plaintiffs appeal.—
*Affirmed.*

*J. M. Brayton* and *A. A. House* for appellants.

*Yoran & Arnold, Bronson & Carr,* and *Blair, Dun-
ham & Norris* for appellees.

Robinson, J.—The pleadings and an agreement of
the parties show the following facts: The plaintiffs are
citizens and taxpayers of Delaware county, and bring
this action for themselves and for the benefit of others
interested in the questions involved. The defendants
are members of the board of supervisors of Delaware
county. At a session of that board held in June, 1893, a
special election was ordered to be held in the county on
the twenty-second day of the next August, on questions
which were set out in the notice of election, of which
the parts material for our consideration are as follows:
"Special Election Notice. Pursuant to a petition pre-
sented by resident voters of Delaware county, Iowa, to
the board of supervisors of said county, at the regular
June session, A. D. 1893, of said board, asking that a
new courthouse be built at Manchester, Iowa, at a cost

of not to exceed forty thousand dollars, and that the swamp-land indemnity fund be applied on payment of the same, and, said petition being duly allowed by said board, notice is hereby given that by order made on the 10th day of June, A. D. 1893, being on a day of the regular June session, 1893, of the board of supervisors of Delaware county, Iowa, an order was passed by said board of supervisors directing that there be submitted to the qualified electors of Delaware county at a special election to be held on Tuesday, August 22, 1893, the following questions, viz: (One) Shall a courthouse be built at Manchester, Delaware county, Iowa, at an expense not to exceed forty thousand dollars? (Two) Shall the swamp-land indemnity fund of said county be used toward said courthouse? (Three) Shall the surplus in the county fund on hand be used in building said courthouse? And in pursuance of said order a special election is called to be held throughout said county of Delaware, at the usual places of voting, on Tuesday, August 22, 1893. Polls open from 8 o'clock A. M. to 6 o'clock P. M." An election was held at the time specified, and upon a canvass of the returns the board of supervisors declared the vote to be in favor of the questions submitted, the majority in favor of each having been more than eight hundred. No vote was taken upon any question except those we have set out. The unexpended swamp-land fund belonging to Delaware county was nineteen thousand nine hundred and seventy-five dollars, and at the time of election there was in the county fund subject to the order of the board of supervisors for county purposes the sum of twenty-one thousand five hundred dollars. The outstanding liabilities of the county did not exceed one thousand dollars. It also appears that the average annual expenditures of the county funds for the last five years have been thirty-five thousand dollars, and the expenditures

from that fund since the election have not exceeded the collections for it. In September, 1893, the board of supervisors levied for the county fund, for one year, taxes which will amount to thirty-six thousand dollars. The board of supervisors contemplates the erection of a courthouse, and intends to use for that purpose more than five thousand dollars of the county fund. The appellants contend that the board of supervisors has no legal right to expend more than five thousand dollars of the county fund in the erection of a courthouse without the submission of the question of levying a tax for that purpose to a vote of the people, and that this is true even though the money of that fund in the county treasury is sufficient for the erection of the building without the aid of a tax. Subdivision 24 of section 303 of the Code contains the following: "It shall not be competent for the board of supervisors to order the erection of a courthouse, jail, poor-house, or other building or bridge when the probable cost will exceed five thousand dollars, nor the purchase of real estate for county purposes exceeding two thousand dollars in value, until a proposition therefor shall have first been submitted to the legal voters of the county and voted for by a majority of all voting for and against such proposition at a general or special election. * * *" Under this provision the contemplated expenditure is illegal, unless it has been authorized by a vote of the electors of the county. Section 309 of the Code provides that the board of supervisors may submit to the people of the county the question whether money may be borrowed to aid in the erection of any public buildings, and certain other questions. Section 310 provides that the mode of submitting such questions to the people shall be the following: "The whole question, including the sum desired to be raised, or the amount of tax desired to be

levied, or the rate per annum  *  *  *  shall be published at least four weeks in some newspaper printed in the county." Section 311 is as follows: "When the question so submitted involves the borrowing or the expenditure of money, the proposition of the question must be accompanied by a provision to lay a tax for the payment thereof in addition to the usual taxes, as directed in the following section, and no vote adopting the question proposed will be of effect unless it adopt the tax also."

It was held in *McMillan v. Boyles,* 3 Iowa, 313, that to render valid a vote adopting a proposition for the county to subscribe for stock in a railway company it must be accompanied by a proposition for levying a tax to pay the subscription. In *Starr v. Board,* 22 Iowa, 492, it appeared that the question of purchasing a hall for a courthouse had been submitted to the people, who had voted in favor of it, but that no proposition to levy a tax was submitted, and that there was not sufficient money in the treasury to pay the stipulated price. It was held that the proposition to purchase the property should have been accompanied by a proposition to levy a tax to pay for it in order to make the vote effectual. It will be noticed that in neither of the cases was the necessity for submitting to a vote of the people the question of levying a tax when it was not needed involved, and it is insisted by the appellees that section 311 of the Code has no application to a case of that kind. We are thus led to inquire to what do the words, "when a question so submitted involves the borrowing or the expenditure of money," in that section, and the words "such question" in the preceding section refer? It is claimed by the appellants that they refer to the questions which may be submitted under section 309, and also to propositions which may be submitted to the people by authority of subdivision 24 of section 303.

The original of sections 309, 310, and 311 of the Code appeared in the Code of 1851 as sections 114, 115, and 116, and referred to the power and duties of the county judges. Section 114 provided for the submission of all questions to which the two succeeding sections referred, and section 116 did not contemplate any others. That it could not have referred to the provisions quoted from subdivision 24 of section 303 of the Code is evident for the reason that the provision was not in existence until the year 1860, when it was enacted as a part of chapter 46 of the Acts of the Eighth General Assembly, which created the system of county boards of supervisors. For some years prior to the taking effect of that act "there was no limit upon the discretion or power of the county judge to provide a courthouse for his county. He could buy a courthouse or build one at whatever cost or expense his judgment should deem proper." *Starr v. Board*, 22 Iowa, 496. The section of the Code of 1851 to which we have referred did not affect the power of the county judges to contract for county courthouses. *State v. Napier*, 7 Iowa, 426. The Eighth General Assembly, by an act published as chapter 111 of the special acts and resolutions of that body, provided that "no contract made by any county judge for the use of or for the erection of county buildings where the expenditures exceed two thousand dollars, shall be legal unless it is first submitted to a vote of the people of his county as provided in sections 113 and 114 of the Code" (of 1851). The power of the county judge to contract for county buildings was transferred to the board of supervisors by an act of the same general assembly. Subdivision 23 of section 11 of that act, incorporated in section 312 of the Revision of 1860, includes the subject-matter of the statute first quoted, and is, in effect, a revision of it; but it does not include any reference to section 114 of the Code of 1851, nor to the corresponding section 250 of the

Revision of 1860, and we conclude that the part of chapter 111 omitted from the Revision is not a part of the law which governs boards of supervisors. The act creating county boards of supervisors took effect July 4, 1860. Section 24 of that act is as follows: "In all cases where the powers hereby conferred upon said board of supervisors have heretofore been exercised by the county judge, county court, or other county officers, the said supervisors shall conduct their proceedings under said powers in the same way and manner, as nearly as may be, as it is now provided by law in such cases for the proceedings of said county judge, county court, or other county officers, provided they are not inconsistent with the provisions of this act." Chapter 100 of the acts of the same general assembly, which took effect January 1, 1861, contains the following: "All laws which may be in force at the time of taking effect of this act, devolving any jurisdiction or powers on county judges, which said jurisdiction or powers are conferred on the county board of supervisors by an act of the present general assembly, entitled 'An act creating a board of county supervisors, defining their duties and the duties of certain county officers,' shall be held to apply to, and devolve said jurisdiction upon the said county board of supervisors in the same manner and to the same extent as though the words 'county board of supervisors' occurred in said laws instead of the word 'county judge.'" It was held in *Starr v. Board, supra,* that these provisions were applicable to the board of supervisors in the submission of propositions in regard to the erection or purchase of a courthouse, for which subdivision 23 of section 312 of the Revision, now a part of subdivision 24 of section 303 of the Code, provides, and that the proposition should be accompanied by one to levy a tax. But, as we have seen, in that case there was no money in the county treasury with which to pay

for the proposed purchase, and the language of the opinion must be construed in the light of that fact.   It is not the intent of the law to require a useless act.   If a county has in its county fund money sufficient to pay for a building which it requires, and the money is not needed for any other purpose, it would be worse than useless to impose a tax to raise money with which to make the payment.   Subdivision 24 of section 303 of the Code does not provide for the approval of a contract by the people, but for the submission to them of propositions to erect public buildings or purchase real estate.   A careful examination of sections 309 and 310 of the Code shows that they do not refer in any manner to funds in the county treasury.   Section 309 provides for a vote on several questions, and among them that of borrowing money to aid in the erection of public buildings, and for a vote on the question of levying a higher tax than that provided by law when the warrants of the county are at a depreciated value.   Section 310 provides the mode of submitting those questions to the people.   Section 311 refers to the questions for which sections 309 and 310 provide, and, as they have no relation to money already in the treasury, section 311 can have no reference to it.   We conclude that the law is as follows:   Before a board of supervisors can order the erection of a courthouse the probable cost of which will exceed five thousand dollars, it must be authorized to do so by a vote of the electors of the county, and when there is money in the treasury available and sufficient to pay for the building it is not necessary to submit to the people a provision to levy a tax.   But when, in order to pay for the building, money must be borrowed, or a debt be incurred, then the question of borrowing the money must be submitted with the proposition to erect the building.   It follows from an application of

the law to the facts in this case that the vote of the electors of Delaware county in favor of the proposition to build a courthouse was not affected by omitting to submit with the proposition a provision to levy a tax.

II. It is claimed that there was no surplus in the county fund for use in building a courthouse. The admitted facts show that when the vote was taken there were not less than twenty thousand five hundred dollars in that fund after deducting therefrom an amount sufficient to pay all outstanding obligations against it, and that the tax levy, which was authorized by law, and made by the board, provided all the money necessary to pay current expenses. It is true, the expenses of a county for a year cannot be foretold with exactness, but an approximate estimate of them can be, and as a rule is, made when the tax is levied, and it appears that they were fully anticipated in this case. We think it is fully shown that there was a surplus in the county fund sufficient, with the swamp-land fund, to erect the proposed building. The conclusions we have announced dispose of the controlling questions in this case, and the decree of the district court is *affirmed*.