BARRETT V. BROOKS *et al.*

1. **Swamp lands:** FEE SIMPLE. Under the act of congress of the 28th of September, 1850, the fee simple title to the swamp lands passes to the State, and the legislature may dispose of the same.

2. —— TRUST. The United States is the only party which can enforce the trust coupled with said grant, to apply the funds arising from the sale of swamp lands "exclusively, *as far as necessary*, to the purpose of reclaiming said lands." It cannot be enforced on the application of a private citizen.

3. —— GRANTED TO COUNTIES: ERECTION OF BRIDGES. The legislature has granted the swamp lands of the State to the several counties in which they are situated; and has granted to them the power to use the swamp land funds in the erection of public bridges, upon a vote of the people being first had.

4. —— SUBMISSION TO THE PEOPLE: CONTRACT. A proposition to appropriate swamp land funds to aid in the erection of a bridge, may be submitted to the electors of the county, without the contract under which the bridge is to be built.

5. Bridges: IN INCORPORATED TOWNS OR CITIES. *Bell* v. *Foutch, ante,* as to the power of the counties to aid in the erection of a public bridge on a public highway within the limits of an incorporated town or city, reaffirmed.

*Appeal from Polk District Court.*

FRIDAY, JUNE 29.

SWAMP LAND: POWER OF COUNTIES OVER: STATUTES CONSTRUED: POWER TO AID TO BUILD BRIDGES, &C. — This case relates to the same bridge, and involves many of the same questions decided in *Bell* v. *Foutch et al., ante.* For a more full statement reference is made to that case.

The present cause also involves some questions not presented in the *Bell* case. Only such additional facts will be here stated as will enable the present cause to be understood.

The plaintiff is a tax payer of Polk county residing outside of the city of Des Moines. The defendants are the board of supervisors and certain county officers.

The object of the present suit is to restrain the supervisors from appropriating $7,000 of the swamp land fund of Polk county to aid in the erection of a free bridge over the Des Moines river at the foot of Walnut street in the city of Des Moines. At the June meeting in the year 1864,

VOL. XXI.—19

the board of supervisors adopted the following *resolution:* "That the clerk is hereby authorized to submit the question to the voters at the next election, whether they will appropriate the sum of $7,000 out of the *swamp land fund* to aid in erecting a free bridge for the citizens of Polk county, Iowa, across the Des Moines river at the foot of Walnut street (west side), *provided* the citizens will appropriate an equal amount to be expended under the direction of a committee appointed by this board and the city council."

This question was voted upon at the next regular election (November 8, 1864), and resulted in a large majority in favor of the appropriation, as shown by a canvass of the votes made and signed by the board of supervisors.

After this result was ascertained, the board appointed Messrs. Laird, Spofford and Withrow a committee to act in its behalf, and they were authorized "to superintend the building of the bridge, and to draw orders on the proper fund whenever the conditions of the appropriation are complied with."

The bridge contract referred to in the Bell case is not referred to in the pleadings, nor made the subject of complaint in this case.

The application for the injunction was made in vacation to the Hon. CHARLES C. NOURSE, as judge of the 5th district, who granted the injunction, and "ordered that no appropriation of the $7,000 and no payment of the same be made, and no order for the payment thereof shall be drawn except as follows: "That when the board of supervisors shall have ascertained and declared by resolution of a majority of the board that the condition requiring the citizens to raise by subscription the sum of $7,000 for said bridge has been complied with, said board may, by resolution, appropriate the $7,000 voted to aid in the erection of said Walnut street bridge, and may, by resolution, authorize the clerk to draw a warrant upon the swamp land

fund, for an amount not exceeding $7,000, in favor of any person or persons appointed by the board, and who have been required to execute and have executed bonds with sureties approved by the board, or clerk thereof, conditioned for the faithful application of the moneys so appropriated, and the treasurer of the county may pay a warrant so drawn, but is enjoined from paying any other."

The injunction was disallowed, except as above, to which the plaintiff excepted and appeals. He now insists, that it should have been granted unconditionally and the board absolutely restrained from making the appropriation out of the swamp land fund under any circumstances.

*Polk & Hubbell* for the plaintiff.

*John Mitchell* and *J. M. Dorr* for the defendants.

DILLON, J. — I. The first point made by the appellant is, that under the act of congress of 28th September, 1850 (9 U. S. Stat. at Large, 519), swamp lands or their proceeds, cannot be used, nor can the legislature of the State authorize them to be used, for any purpose except to reclaim the lands by means of levees and drains.

I. SWAMP LANDS: fee simple.

By the act of congress, it is provided that a patent shall issue to the State for these lands; "and on that patent," it is declared that "the fee simple to said lands shall vest in the State, subject to the disposal of the legislature thereof: *Provided*, however, that the proceeds of said lands, whether from sale or by direct appropriation, in kind shall be applied exclusively, as far as necessary, to the purpose of reclaiming said lands by means of the levees and drains aforesaid." It is plain (for it is so *expressly* declared) that the fee simple of the swamp lands passed to the State, and

that the legislature of the State may dispose of the same. See, upon the construction of the act of congress, *Alison* v. *Halfacre*, 11 Iowa, 450; *Whiteside County* v. *Burchell*, 31 Ill., 68; *Franklin County* v. *District Court of Same County*, 23 Mo. (2 Jones), 449.

But the proceeds of these lands, it is further provided, by the act making the grant, " shall be applied exclusively, *as far as necessary*, to the purpose of reclaiming said lands." The plaintiff alleges in his petition, that he lives in the immediate vicinity of swamp and overflowed lands; that he is interested in having the same reclaimed ; that the health of himself and family is injuriously affected by ponds and sloughs which could be removed by proper drainage.

The plaintiff does not show that the balance of said lands and funds, would not be ample to reclaim the swamp and overflowed lands of the county. At most these funds are to be applied to drainage purposes only so far as *necessary*. Beyond that, it is certain that the State may dispose of or authorize the disposition of the proceeds of these lands without limitation. This is one answer to the plaintiff's claim.

Another answer is this: The United States is the donor. Admit that the State or the county holds the lands, charged with a trust to apply the proceeds, as far as necessary, to the reclamation of said lands, who can enforce this trust? The United States might. But it seems to us that it would never do to allow a single citizen to allege that certain drainage is *necessary* in his neighborhood, or in the county, and permit him to maintain a bill in court to settle this as a *judicial* question. Suppose the allegation is denied. The court will then be obliged to receive testimony touching the question whether all *necessary* drains and levees in the county have been constructed for the reclamation of swamp and overflowed lands. The United

States in this grant deals with the States, and not with counties or individuals. If the United States is satisfied with the disposition which the State has made, or authorized to be made, of these lands, individual citizens must remain content.

II. The next question is, has the county of Polk been authorized by the legislature to dispose of the swamp land fund to aid in the erection of public bridges in the county? and if so, has that authority been regularly exercised.

*3.—— granted to counties: erection of bridges.*

Under the power of disposition given to the State by the aforesaid act of congress, the State has granted the swamp lands to the several counties (Rev. ch. 47; acts 1862, p. 78); and has given them the power in *express terms* to use them or their proceeds in "the building of bridges" in the county, upon being authorized to do so by a vote of the people; the county not being released, however, from making the necessary drains and levees contemplated by the act of congress. Acts 1862, p. 78, Rev., §§ 925, 986.

The special act of 1860 (Laws 1860, p. 86), which simply authorizes the county judge of Polk county to appropriate such portions of the proceeds of the sale of swamp lands in said county as may be necessary for the completion of the court-house, is manifestly permissive. It does not direct them to be so appropriated. They are not by that act specially set apart or devoted to that use. The county may (under the act) use the power it confers or not, as it pleases.

It is clear then that the legislature has authorized the county supervisors to use the swamp land funds to build public bridges upon a vote of the people being first had. And the record before us shows that the question whether the swamp land funds should be thus used was submitted to the people and carried.

It is, moreover, objected by the appellant that the vote in this case was irregular because the *contract* under which the bridge is to be built, was not first submitted to a vote of the people. It is our opinion that in a case like that before us, viz., an ordinary appropriation to aid in the building of a bridge, the contract does not have to be submitted to a vote of the people. Section 986 as amended by acts of 1862 (Laws 1862, p. 78) simply requires the *question* to be submitted, whether the people will devote so much of the swamp land fund to the building of a bridge. Here the particular amount, viz., $7,000; the character of the bridge, a free bridge; and the location, over the Des Moines at the foot of Walnut street; and the condition, viz., that the citizens would raise an equal sum, were all submitted and that is enough. In such cases as this, building of bridges, there is not necessarily any contract, for the board may order the money to be expended by and under the direction of the appropriate public officers of the county. The present is not a case falling within sections 987 and 988 of the Revision.

*4. —— submission to the people: contract.*

III. The appellant next claims that admitting that the county has power upon a vote of the people to use swamp land funds for the building of bridges, and admitting that the vote was had, still the county cannot, even by a vote of the people, appropriate money belonging to it to aid in the erection of a bridge within the limits of a city. This is the same question made in the case of *Bell* v. *Foutch et al.,* decided at the present term. And the appellant's counsel has re-argued that question in this case, and endeavored to controvert the position taken by the court in deciding the former case. This, in our opinion, he has not successfully done.

*5. BRIDGE: in an incorporated town or city.*

Of the soundness and justice of that decision, we are more assured after hearing the argument of the appellant's

counsel, as he failed to detect or point out a flaw in the reasoning by which our conclusion was reached. That decision rests upon two distinct grounds, and if either is sound the decision is right.

The first ground is, that in the matter of erecting public bridges over large streams, the county may have power even inside of the limits of a city, especially when such bridges are upon and directly connect with highways traversing the county. We do not propose to repeat the arguments drawn from our road and bridge system of laws by which the view is sustained. But if we admit that there may be some doubt about this ground of the decision, there can be none, as it seems to us, upon the other ground, which is: that under our statute, roads and large public bridges are matters of county concern; that the county is endowed with the power to levy a bridge tax upon *all* the property in the county (including that *within* cities and towns, as well as that outside of them), and charged with the duty of erecting the necessary bridges to accommodate the public travel. This, under our law, is a *county* duty — a matter of county concern.

Different nations, according to their general frame of government, adopt different modes of providing roads and bridges. In modern France, for example, a highly centralized despotism, the State is everything. Their municipal institutions are without a democratic element, or the power of independent local self-government. The central power governs and regulates everything. It provides amusements, *constructs roads and bridges*, controls trade, inspects manufactures, &c. — the only agency of the people being the poor privilege of paying the expense.

But under our decentralized system it is entirely different. Here each local constituency chooses its own officers, each town, city, road district, school-district, and county administers its own affairs. This is the vital principle of Ameri-

can liberty, the distinguishing feature of our system of government, and is so regarded by political philosophers and distinguished jurists. De Tocqueville Democ. Am., ch. 5; 2 Kent Com., 275, *n.; People* v. *Draper*, 15 N. Y., 532, 562, per BROWN, J.

With such a multitude as we possess of civil territorial divisions, with powers of local administration, it is not surprising that there should be at times difficulty in ascertaining precisely the functions and boundaries of each. But, under our laws, we think it clear that the erection of such a bridge as the one in question is not a matter foreign to the powers and duties of the county. The county has the supervision of roads, highways and bridges. County supervisors have power (§ 312, subd. 18) "to provide for the erection of *all bridges* which may be necessary, and which the public convenience may require within their respective counties, and to keep the same in repair."

Not only so, but they have power "to *aid* in constructing roads and bridges" (Rev., §§ 250, 313), and the authority to levy a tax to execute these powers. Rev., § 710, subd. 4.

Now, if it be conceded that the county could not, without the consent and against the will of the city, erect a bridge over a stream inside the city limits, yet if such a bridge is deemed by the county authorities to be necessary and required by the public convenience, if they see that such a bridge, though upon or at the foot of streets of a city, connects with the public highways of the county, and will accommodate the people at large, we think they may *aid* in its construction if they see fit to do so, and that money thus appropriated is not an appropriation for an object foreign to the purposes for which a county is erected and organized.

The more especially should this be so regarded when, if the opposite views were taken, the inhabitants of the

cities and towns would be compelled to pay a bridge tax without any possibility of participating in the objects for which the tax was laid; would be compelled to see the swamp land fund (to which they have a claim equally with residents outside of the city), so far as it is devoted to the building of roads and bridges, exclusively monopolized by those portions of the county not embraced within the limits of municipal corporations.

We fail to see, in the appellant's view leading to such results, anything to recommend it to our sense of justice or right.

And, upon mature consideration, we stand by the decision made in the former case.

The order of the District Court deprived the appellant of all just ground of complaint, and it is accordingly

Affirmed.