THE TOWN OF LA POINTE vs. THE TOWN OF ASHLAND.

PLEADING. *(1, 2) Complaint construed.*
DRAINAGE FUND. *(3) Validity of statutes for distribution of the fund. When officers estopped to deny their validity.*

1. In an action by one town against another in the same county, to recover drainage moneys of the plaintiff town wrongfully received by defendant and appropriated to its own use, averments that all the swamp lands upon the sale of which said funds were received, were, at the time of such sale, situated in the plaintiff town, and none of them within the limits of the defendant town, followed by a general averment that the money belonged to the plaintiff, *construed* to mean that said lands were within the limits of the plaintiff town *as those limits existed at the commencement of the action;* where it appeared that when the lands were sold, the plaintiff town included the whole area of the county.

2. The want of any averment in the complaint that the county clerk made a distribution of the drainage moneys in the hands of the county treasurer, amongst the several towns of the county, as required by statute, *held,* on demurrer, to be cured by an averment that the county treasurer *duly* passed said moneys to the credit of the plaintiff town, and paid them to its treasurer.

3. The laws of this state for the distribution of the "drainage fund" to the towns are *valid;* and if they were void as violating the trust upon which the swamp lands were granted by congress to the state, neither a town treasurer who received them as such treasurer for the use of his town, pursuant to those laws, nor any person to whom he unlawfully transferred them, could be heard to defend against liability to the town therefor, on the ground that such laws were invalid *(Bullwinkel v. Guttenberg,* 17 Wis., 583; *Cairns v. O'Bleness,* 40 id., 369); and an order of the county board directing such town treasurer to pay a part of said funds to another town would be void, and no protection to the treasurer or to the town receiving the money pursuant thereto.

APPEAL from the Circuit Court for *Ashland* County.

The case is thus stated by Mr. Justice TAYLOR:

This action was brought by the appellant town to recover of the respondent the sum of $10,000 of drainage-fund money, which the appellant claims belonged to it, and which had been unlawfully received by and appropriated to the use of the respondent town.

The complaint contains the following allegations:

" 1. That the respective parties are duly organized towns of the county of Ashland.

" 2. That on the first day of August, 1872, the county treasurer of the county of Ashland received from the commissioners of school and university lands the sum of $24,592, money known as the drainage fund; that such money was received by said commissioners from the sales of lands granted to this state by the act of congress entitled ' An act to enable the state of Arkansas and other states to reclaim the swamp lands within their limits,' approved September 28, 1850, and known as swamp and overflowed lands lying in said county of Ashland, made between the first day of June, 1871, and the first day of June, 1872; and that such money was paid over to said county treasurer in trust, to be rendered to the towns in which the lands lay from which the same was derived, pursuant to chapter 537, Laws of 1865, and chapter 151, Laws of 1869, and acts amendatory thereof.

" 3. That all the lands so sold, and for the sale of which the said sum of $24,592 was received as aforesaid, were, at the time said sales were made, situated in the town of La Pointe, and none of said lands were within the limits of the town of Ashland."

The other allegations of the complaint show that the commissioners made out the statement of the lands sold in said county of Ashland within the year aforesaid, as required by law, and transmitted and filed the same with the county clerk of the said county of Ashland, and that said certificate shows that all the lands sold were situate in the limits of the town of La Pointe; and it is alleged generally that all the money belonged to said town. The complaint then alleges that one George A. Stahl was the county treasurer who received said money, and was at the same time the treasurer of said town of La Pointe; that it became and was his duty to pay the treasurer of the town of La Pointe the whole of said money; that, in the execution of his duty in that respect, he duly passed said moneys to the credit of the plaintiff, the town of La Pointe, and entered the same upon his books as such treasurer of the plaintiff, and paid the same in fact into the treasury of the plaintiff; and that said money came in fact into the actual possession and became the property of the plaintiff. The complaint then alleges that said Stahl, as treasurer of said county, as well as of the plaintiff, afterwards transferred and paid over to the town treasurer of the town of Ashland, out of said sum of $24,592, the sum of $10,000, and that such payment was made by and in pursuance of a resolution or order made by the county board of supervisors of Ashland county, on the third day of August, 1872; that said order was wholly void, and a gross usurpation of unauthorized power; that the town treasurer of said town of Ashland received said sum of $10,000 into the town treasury of said town, and for the public uses of said town, and that the same was accepted by the town board of said town, and the inhabitants thereof, as a part

of the public money of said town, and was afterwards paid out by said town treasurer upon orders drawn upon him by the board of supervisors of said town, for the public use; that the plaintiff presented a duly verified account for said sum of $10,000 to the proper board of auditors of said town, to be audited, settled and allowed; and that said board disallowed the whole of said account, and no part of the same has ever been paid to the plaintiff. Judgment is demanded for the said sum of $10,000, and interest thereon from the seventh day of October, 1872.

To this complaint the defendant town filed a general demurrer, alleging that it did not .state facts sufficient to constitute a cause of action. The circuit court sustained the demurrer; and the plaintiff appealed from the order.

For the appellant, there was a brief by *Vilas & Bryant*, and oral argument by *W. F. Vilas*.

*H. N. Setzer*, for the respondent.

TAYLOR, J.    1. The first objection taken to the complaint in this court by the learned counsel for the respondent is, that it does not show that the money ever belonged to the town of La Pointe. The ground of this objection is, that when the lands were sold from which the money was derived, the town of La Pointe covered the whole area of the county of Ashland — the town of Ashland not having been formed or organized until after such sales had all been made, viz., the second of July, 1872; and that therefore the allegation in the complaint " that all the lands so sold were, at the time said sales were made, situate in said town of La Pointe, and none of such lands were within the limits of the town of Ashland," does not show that none of said lands were situate within the limits of the town of Ashland after the same was organized. The allegation that they were, when sold, within the limits of the town of La Pointe, might be strictly true at the time when they were sold, as at that time the town of La Pointe covered the whole county, and still

AUGUST TERM, 1879.          255

The Town of La Pointe vs. The Town of Ashland.

they might be within the limits of the town of Ashland after the formation of such town.

We are inclined to hold that this criticism upon the meaning of this allegation is not well taken. We think the allegagation must be construed as relating to the limits of the towns as they existed at the time of the commencement of the action, and that the proper construction is, that the lands were within the limits of the town of La Pointe as then bounded, and not within the limits of the town of Ashland as then bounded. The further allegation in the complaint, which alleges that the descriptions of all said lands in the certificate of the commissioners show them to be situated in the limits of the town of La Pointe, this plaintiff, removes any doubt or ambiguity in the previous allegation; as the latter allegation clearly means the town of La Pointe as bounded at the time of the commencement of the action.

The want of an allegation in the complaint that the county clerk of the county made a distribution of the said sum of $24,592 amongst the several towns of the county, as required by section 11, ch. 537, Laws of 1865 (sec. 255, R. S. 1878), is cured, we think, by the general allegation that the county treasurer duly passed said moneys to the credit of the plaintiff town, and paid the same in fact into the treasury of said town, and that the money came into possession of said town. These allegations, connected with the other allegations showing conclusively that the plaintiff town was entitled to receive the whole money, show with sufficient clearness that the possession and title to said money were in the plaintiff at the time it is alleged to have been unlawfully paid over to and received by the defendant town.

There is no dispute between the parties to the action that, under the provisions of the laws of this state, the plaintiff town is entitled to the whole sum of $24,592, if such sum was received from the sales of swamp and overflowed lands situate within the limits of said town as the same was bounded at the time

256    SUPREME COURT OF WISCONSIN,

The Town of La Pointe vs. The Town of Ashland.

the money was received by the county treasurer from the commissioners of the school and university lands; and, as we understand the allegations of the complaint, it sufficiently shows that such was the fact. Nor is it disputed that the defendant town is liable to the plaintiff for the said sum of $10,000 received by it and appropriated by it to its public purposes, unless we shall hold that the whole law of this state regulating the distribution of the moneys derived from the sale of the swamp and overflowed lands is void.

2. It is insisted by the learned counsel for the respondent, that the laws of this state regulating the distribution of the moneys derived from the sale of swamp and overflowed lands are void, because they violate the provisions of the act of congress donating them to the state. If such laws were void for that reason, still we are of the opinion that the defendant could not avail himself of that fact as a defense to this action.

It seems to us quite clear that the treasurer of the plaintiff town could not, in an action against him for refusing to pay the money so received to the town or to his successor in office, have defended on the plea that the laws in pursuance of the provisions of which he received the money were void, because they violated the trust created by the act of congress. Having received the money under the provisions of the law, for the use of the town, he is estopped from setting up that the law is void. He must hold the money subject to the provisions of the law under which he received it, until he has been coërced by some higher and superior power to hold the same for some other purpose. Having received the money for the use of his town as a public officer, he cannot convert it to his own use and set the town at defiance on the plea that the law under which he received it was void, and that the town has therefore no right to the money. We think this question has been settled by this court in the cases of *Bullwinkel v. Guttenberg*, 17 Wis., 583, and *Cairns v. O'Bleness*, 40 Wis., 469.

In the first case it was held that the treasurer of the town

AUGUST TERM, 1879. 257

The Town of La Pointe vs. The Town of Ashland.

must pay over to his successor in office all moneys collected by him as such treasurer, although they were in excess of the sums authorized by law to be collected by the town. This the court say was a matter between the town and the taxpayer, and not between the treasurer and the town. He, having received the money in his capacity as treasurer for the town, must account to the town for it.

In the case of *Cairns v. O'Bleness*, the treasurer of the town refused to pay over money collected by him as its treasurer; and one ground of defense was, that he had collected the money upon the tax roll without having any warrant directing him to collect the same. Upon this point the chief justice says: "It appears that the treasurer collected the tax without a warrant as required by the statute. But he collected it for the town, *virtute officii;* and, having done so, could not retain the money as his own upon the ground that his authority was imperfect. He might have declined to collect the tax without warrant; having collected it upon the tax roll, for the town, he could not be heard to claim that he collected it for himself." The same rule has been sustained to its full extent by the courts of Vermont and Maine. *Town of Lyndon v. Miller*, 36 Vt., 329; *Inhabitants of Trescott v. Moan*, 50 Maine, 347.

In the last case cited the court say: "But it is contended that the proceedings of the town were irregular, informal and illegal. This is manifestly true. It is not often that such a medley of irregularities is exhibited in the proceedings of our municipal corporations. But the question is, Are these irregularities of such a character as to exonerate the defendants from paying over money which they have collected by virtue of these proceedings from the citizens, and to which they have no title, equitable or legal? The authorities, as well as every moral principle, negative such a proposition." So, in the case at bar, had the action been against the town treasurer of the town of La Pointe to compel him to pay over this money to his successor, he, having received the same for the use of his

town, by virtue of his office as town treasurer, would not be permitted to allege that the law under which he received it was void. Having received the money as the treasurer of the town, he must account to the town for it, unless he can show, as above stated, that he has been lawfully compelled, by some superior power or authority, to pay it over for some other lawful purpose.

We think the defendant town can have no better title to retain this money than the treasurer from whom it was received. The order of the county board, directing the payment of this money to the defendant town, was simply void, and conferred no authority on the treasurer of the plaintiff town to pay over the money, nor upon the defendant town to receive it. For the purposes of this demurrer, the defendant town must be held to have known, when it took and used the $10,000, that it had no right to receive the same, and that the treasurer of the plaintiff had no right to pay the same over to it; and, having received the money and appropriated it to the public uses of the town, it must respond to the plaintiff.

But we do not think the laws of the state upon the subject of the distribution of the moneys derived from the sale of the swamp and overflowed lands are void because they violate the trust, if any there be, imposed upon the state by the act of congress granting the same to the state. That part of the act of congress which is supposed to limit the power of the state in the distribution of such funds, reads as follows: "That the proceeds of said lands, whether from sale or direct appropriation in kind, shall be applied exclusively, as far as necessary, to the purpose of reclaiming said lands by means of levees and drains aforesaid."

The power to decide what part of the proceeds of the sales of these lands, or of the lands themselves, it is necessary to appropriate for the purposes of their drainage and reclamation, must be vested in the legislature of the state, as there is no other authority in the state which can determine that ques-

tion. This was intimated very strongly by this court in *State v. Hastings*, 11 Wis., 448, 453. The title to these swamp lands is vested in the state by virtue of the grant made by congress. The state has full power, therefore, to sell and transfer the lands, and no trust fastens upon or follows the lands. The trust imposed by the act is a personal one, and is obligatory only upon the state.

The supreme court of the United States say, in regard to the trust created upon the donation of lands to the state for the support of schools: "The trusts created by these compacts relate to a subject, certainly of universal interest, but of municipal concern, over which the power of the state is plenary and exclusive. In the present instance the grant is to the state directly, without limitation of its power, though there is a sacred obligation imposed on the public faith." *Cooper v. Roberts*, 18 How., 173, 182. In *Dunklin County v. The District County Court of Dunklin County*, 23 Mo., 449, the supreme court of Missouri held that the trust created by the act of congress granting the swamp lands to the state was a personal trust reposed in the public faith of the state, and not a property trust fastened upon the land.

In *Barrett v. Brooks*, 21 Iowa, 144, the supreme court of the state of Iowa held: *first*, that under said act of congress the fee-simple title to the swamp lands passed to the state, and the legislature might dispose of the same; and *second*, that the United States is the only party which can enforce the trust coupled with said grant, to apply the funds arising from the sale of such lands "exclusively, as far as necessary, to the purpose of reclaiming the lands." It cannot be enforced on the application of a private citizen. In this last case the supervisors of the county, under the authority of a law of the state, appropriated $7,000 of the swamp-land fund to aid in the building of bridges in the county. A citizen undertook to restrain such appropriation, on the ground that it was a diversion of the fund from the purposes contemplated by the act of

congress. Judge DILLON, who delivered the opinion of the court, says: "The United States is the donor. Admit that the state or the county holds the lands charged with a trust to apply the proceeds, as far as necessary, to the reclamation of said lands: who can enforce this trust? The United States might. But it seems to us that it would never do to allow a single citizen to allege that certain drainage is necessary in his neighborhood, or in the county, and permit him to maintain a bill to settle this as a judicial question. The court will then be obliged to receive testimony touching the question whether all necessary drains and levees in the county have been constructed for the reclamation of swamp and overflowed lands. The United States, in this grant, deals with the states, and not with counties or individuals. If the United States is satisfied with the disposition which the state has made, or authorized to be made, of these lands, individual citizens must remain content." The same doctrine is, in substance, held by the supreme court of the United States in *Schulenberg v. Harriman*, 21 Wall., 44.

In *Supervisors v. State's Attorney*, 31 Ill., 68, 78, 79, the supreme court of the state of Illinois hold that the grant of the swamp lands to the states was absolute, and that the act did not even impose a trust upon the state to apply the proceeds of the same to their reclamation; and that the state had the power and right to dispose of such proceeds for any purpose which the legislature should determine was for the interest of the state. And in the same case the court holds that if a trust was imposed by the act of congress, there was no way to enforce it unless the United States should interfere. The same doctrine was reiterated in *Newell v. Supervisors*, 37 Ill., 253.

These authorities fully support the position that the legislature have full power to dispose of the proceeds of the sales of swamp lands, at least as against everybody except the United States; and that no person or corporation can be per-

mitted to avoid any responsibility which has been assumed under the laws of the state in regard to the proceeds of the sales of these lands, on the ground that such proceeds are appropriated to a use which is not authorized by the grant of congress, or which is in violation of the trust imposed upon the state by such act.

*By the Court.* — The order of the circuit court is reversed, and the cause remanded for further proceedings according to law.