STATE OF MINNESOTA. *ex rel.* Edgar H. Bass *vs.* JOHN L. MACDONALD.

## April 1, 1880.

Road in more than one County—Petition for laying out —The petition required by Gen. St. 1878, *c.* 13, § 76, for laying out a road through two or more counties in any judicial district, is sufficient, if it is signed by the requisite number of legal voters resident in said counties, though they all reside in one of said counties.

Same—Proceeding is Judicial.—The proceeding authorized to be instituted under said section is in the nature of a special judicial proceeding, to be conducted under the authority and supervision of the district court.

Same—Practice where Commissioners lay out a Different Road from that Ordered.—When commissioners, duly appointed to lay out such road in accordance with the prayer of the petition, proceed to lay out a different one, it is competent for the court, upon the filing of their report, to order the matter to be resubmitted, with directions to comply with the original order appointing them; and this may be done by the court in vacation, after a hearing, upon notice or order to show cause.

Same—Judge held not Disqualified.—Being a tax-payer in one of the counties through which such road is to run does not disqualify a judge from acting in the matter.

On March 15, 1879, pursuant to due notice, a petition was presented to the respondent, as judge of the 8th district, praying that a legal highway might be laid out, located and opened through Carver and Scott counties, in that district, and extending into the county of Hennepin, in the 4th judicial dis-

trict. After designating the initial point of the proposed road, ·
in Carver county, and its route through that county and Scott
county, the road is described as running "into the town of Eden
Prairie in said county of Hennepin, to connect with and end-
ing on the road leading northerly from the ferry across said
(Minnesota) river, known as Baldwin's ferry, at a point on said
road 100 feet north of said river." The petition purported to
be signed by forty-three resident legal voters of the counties of
Scott and Carver, and three resident legal voters of the county
of Hennepin. On the same day the respondent made an order
granting the prayer of the petition, and appointing commis-
sioners to lay out a highway according to such prayer, and
authorizing and directing such commissioners to do all things
necessary to locate and lay out such highway. The commis-
sioners duly qualified, and thereupon proceeded to lay out a
highway over a route somewhat different from that described
in the petition, and made report of their proceedings. Upon
the filing of the report, the petitioners applied to the respond-
ent for an order resubmitting the matter to the commission-
ers, and requiring them to lay out a road as prayed for in the
original petition and directed by the original order. On this
application the respondent made an order requiring the com-
missioners and all persons interested in the road to show
cause before him at his chambers, on May 6, 1879, why the
application should not be granted.

The relator, the owner of a piece of land through which
the proposed road would run, whether as prayed for in the
petition or as actually laid out by the commissioners, there-
upon obtained from this court a writ of prohibition forbidding
further proceedings by respondent on the order to show
cause. In his application for the writ the relator alleged,
(1,) that the respondent, as a resident and tax-payer in Scott
county, was by such interest disqualified from acting in the
matter; (2) that respondent never acquired jurisdiction of the
proceeding, and (3) that if jurisdiction had ever been ac-
quired, it had been exhausted by the proceedings already had.

On the return of the writ the respondent moved that the proceeding be dismissed.

*L. M. Brown,* for relator.

*E. Southworth* and *Gilman & Clough,* for respondent.

CORNELL, J. By Gen. St. 1878, *c.* 13, § 76, it is provided as follows: "Whenever a petition praying that a road be laid through two or more counties in any judicial district in this state, signed by twenty legal voters, resident in said counties, shall be presented to the judge of the district court in said district, the said judge is hereby authorized to appoint three commissioners, whose duty it shall be to meet at such times and places as may be necessary, and to immediately proceed to lay out a road as directed by the judge, in accordance with the prayer of the petition: *provided,* that no road shall be ordered by any judge to extend more than six miles outside the judicial district in which the application is made, and such road shall be extended beyond the district only for the purpose of commencing or ending at some village or public road."

Notices of the presentation of such petition must be posted at least thirty days prior thereto, in at least three public places in the judicial district, and in each county through which the road is to to pass. Id. § 27.

Section 78 prescribes the duties of the commissioners, etc.; provides for an apportionment of the expenses and damages incurred in laying out the road among the several counties through which it runs, and declares that the proportion each shall bear shall be determined by the court, and be entirely in its discretion.

Section 80 enacts that "the commissioners shall make a report of all proceedings had by them under this act to the term of the district court held in the county next after the completion of their duties, and any person feeling aggrieved may appear and be heard thereat. The confirmation of the report of the commissioners by the judge of the district court shall in all cases be final."

Section 82 authorizes any person feeling aggrieved by the

appraisal of the commissioners to demand a jury trial to determine the amount of his damages, by filing with the clerk of the county wherein the report is filed a written demand therefor, "within thirty days after the entry of the order of the court confirming the report of the commissioners."

. In view of these statutory provisions—which must be construed together, as they all relate to the same subject—it is obvious that the special proceeding which they authorize, for laying out a road of the kind therein mentioned, was intended to be placed under the judicial authority, control and supervision of the district court. It is instituted upon a petition to the judge of the district court of the judicial district wherein the proposed road is sought to be located, and upon a notice advising all parties having any interest therein, either for or against the road, of the time and place of the presentation of the petition, so that they may have an opportunity to be heard in the matter. Upon the hearing of the application, the judge tries and determines the question of granting or refusing the prayer of the petition, in his judicial capacity as judge of the district court, and not as an individual; in like capacity he appoints the commissioners, and directs them to lay out the road in accordance with the prayer of the petition. The apportionment among the counties of the expenses incurred and damages assessed in laying it out, is made and determined by the court, in accordance with its own judgment and discretion. The report of the commissioners is made "to the term of the district court," and its confirmation is by the judge, by "the entry of an order of the court" for that purpose; and any party objecting thereto is entitled to be heard in court upon the subject of confirmation; and if he is dissatisfied with the amount of damages awarded him by the commissioners as compensation for any right of way over his land, he is entitled to a jury trial in respect thereto, by filing a written demand therefor with the clerk of the district court, within thirty days after the entry of the order confirming the report of the commissioners.

'The proceeding, in its nature, and also in the mode of commencing and conducting it, is somewhat analogous to that which was provided by the legislature for the condemnation of land for right of way for railroad purposes, under the General Statutes of 1866, (Gen. St. *c.* 34, § 14, *et seq.*,) the essential features of which have also been incorporated in various special railroad charters in this state. . In that class of cases, the appointment of commissioners by the judge authorized to make the appointment, upon a proper application and notice, has always been regarded as a judicial act, and as the institution of a special judicial proceeding, thereafter to be conducted under the control and jurisdiction of the court. *Warren* v. *First Div. St. Paul & Pacific R. Co.*, 18 Minn. 384–8 and 392. And such, without doubt, is the character of the present proceeding, and the legal effect of the statutory proceedings applicable thereto. See *Patchin* v. *Trustees of Brooklyn*, 2 Wend. 377; *Matter of Canal Street*, 11 Wend. 154; *Striker* v. *Kelly*, 2 Denio, 323, 331; *In the Matter of Cooper*, 22 N. Y. 67, 81.

If the petition in this case was sufficient to authorize the judge to act, and sufficient notice had been given of its presentation, he had jurisdiction and authority to appoint the commissioners, and to direct them to lay out the road in accordance with the prayer of the petition. Upon making the order and appointment, the proceeding thereupon became one in court, and its subsequent conduct was under its control and within its jurisdiction. Upon accepting their appointment the commissioners became *quasi* officers of the court, and they will remain such until their report is made and confirmed, or they are otherwise lawfully relieved from the discharge of their duties. 11 Wend. 156, *supra.* As such they are subject to the direction and all lawful orders of the court, and their compliance therewith may be compelled in the usual way, and by the exercise of the general powers possessed by all courts of general jurisdiction, for enforcing obedience to its lawful commands.

29

If, therefore, the commissioners in this case have wholly disregarded and violated the original order in respect to laying out the road, by laying out one entirely different from that contemplated in the petition and order, it is undoubtedly competent for the court, upon being satisfied of that fact, upon a hearing upon an order to show cause, or upon notice, to resubmit the matter to them, with directions to comply with the original order. And this may be done at any time after the filing of the report, either in vacation or term, for the "district court is always open for the transaction of all business, except the trial of issues of fact." Gen. St. 1878, c. 66, § 244. The doing of this in vacation is not prevented by anything contained in section 80, c. 13, *supra*, for, giving to the provisions of that section all the effect that can possibly be claimed for them in respect to the powers of the court, they only apply to the hearing and determination of the question as to the confirmation of the report, which is to be done at term.

As suggested by counsel for relator, the form of the order to show cause in this case is that of an order for a hearing before the judge at chambers. Though technically incorrect in that regard, it is not fatal, for the character of the order must be determined by the nature of the business to be heard; and as this, in the present case, relates to a matter within the jurisdiction of the court to hear and determine, and as the judge of the court is authorized to hold the court in vacation for that kind of business, the order must, within the decision of *Yale* v. *Edgerton*, 11 Minn. 184, (271,) be held good as an order of court.

It is further objected that the petition herein gave the judge no authority to appoint the commissioners and to make the order it did, for the reasons that it does not show that the proposed road was to terminate in Hennepin county—which was outside the judicial district wherein the application was made—"at some village or public road" therein, and that none of the petitioners resided in that county. The petition

describes the proposed road as extending "into the town of Eden Prairie, in Hennepin county, to connect with and ending on the road leading northerly from the ferry across said (the Minnesota) river, known as Baldwin's ferry, at a point on said road 100 feet north of said river." This sufficiently indicates the terminus of the road to be "at a public road." As to the other point, the requirement of the statute is that the petititioners shall be "legal voters resident in the counties" through or into which the road is proposed to be laid. If they all reside within the territorial limits embraced by said counties, this requirement as to residence is satisfied, though they all may reside in but one of such counties.

The judge was not disqualified from acting upon the petition because he was a tax-payer in Scott county, where he resided, and through which the road was to run. The statute expressly makes it his duty to act upon every application of the kind arising within his district, and no exception is made on account of any interest of this remote kind, although it must have been within the knowledge of the legislature that the judge upon whom it imposed the duty would necessarily be a resident, and presumably a tax-payer, in one or more of the counties of his district.

Motion to dismiss the writ granted.