Chicago, Rock Island & Pacific Railway Company v. H. C. Murphy as Treasurer of Polk County, Appellant.

**County Taxation:** cities and towns. The authority given the board of supervisors (Section 1, Chapter 200, Acts Twentieth General Assembly) to levy a tax of not more than one mill on the dollar "of the assessed value of the taxable property in their county" for a county road fund, gives the right to so tax property in a city or town of the county, though no part of the sum raised is expended in said municipality or intended to be so expended.

*Appeal from Polk District Court.*—Hon. C. P. Holmes, Judge.

Thursday, May 26, 1898.

Action in equity to restrain the collection of a road tax levied upon property of the plaintiff. A demurrer to the petition was overruled, and, the defendant refusing to plead further, a decree was rendered in favor of the plaintiff for the relief demanded. The defendant appeals.—*Reversed.*

*W. G. Harvison, C. A. Bishop* and *C. C. Nourse* for appellant.

*Carroll Wright* for appellee.

Robinson, J.—The material facts shown by the pleadings are substantially as follows: The defendant is the treasurer of Polk county, and the defendant owns several lines of

railway in that county, parts of which are within the city of Des Moines, and other parts are within certain incorporated towns. The assessed value of the portions of the plaintiff's railways within the city and towns referred to, as fixed by the executive council for the purposes of taxation, is two hundred and thirty-one thousand four hundred and fifty-two dollars. In the year 1895 the board of supervisors of Polk county levied a tax of one mill on the taxable property within the county for county road purposes; and that levy was carried into the tax lists of the county against the property of the plaintiff, including that within the city of Des Moines, and other towns of the county, and also against a lot of land within the city of Des Moines; and that tax is the one in controversy. The plaintiff has paid all the taxes levied upon its property, excepting the tax in controversy, and seeks to enjoin the collection of that, and to have it declared void and canceled, on the alleged ground that the board of supervisors had no authority to levy such a tax on any property located within the limits of a city or incorporated town. Whether such authority existed at the time the levy was made is the question we are required to determine.

I.    The authority to levy the tax is claimed by virtue of section 1 of chapter 200 of the Acts of the Twentieth General Assembly, which provided "that the board of supervisors of each county may at the time of levying taxes for other pur· poses, levy a tax of not more than one mill on the dollar of the assessed value of the taxable property in their county, which tax shall be collected at the same time and in the same manner as other taxes are collected and shall be known as the county road fund, and shall be paid out only on the order of the board of supervisors for work done on the highways of the county, in such places as the board shall determine.    *    *    *" It is said in behalf of the appellee that a tax, to be valid, must inure to the benefit of the district or locality taxed, and there must be authority to expend the tax, or some portion thereof, within such district. It is further said that the board of supervisors of a county lacked the power, under the statute

cited, to levy a tax on the property within a city or incorporated town for the benefit of the county road fund, for the reason that such fund can be paid out only on the order of the board, and it has no authority to expend any money in grading, repairing, or otherwise improving any street in a city or incorporated town. It was held in *Gallaher v. Head,* 72 Iowa, 173, that counties do not have the right to establish highways within cities and incorporated towns, for the reason that the latter have the right to establish, change, and improve streets within their limits, and to regulate their use, and that such power is inconsistent with a right in the county to establish and improve highways therein, and must be regarded as exclusive. In the case of *McCullom v. Black Hawk County,* 21 Iowa, 409, the liability of a county for a defective bridge within a city was considered; and it was held that although a county is liable in certain cases for defective bridges in highways of the county, and although the bridge there in controversy had been erected by the county upon a highway before the city was incorporated, yet, as it was afterwards included within that city, the liability of the county ended, and that of the city commenced, when the organization of the latter was completed. The decision was based largely upon the conclusion of the court that the city had jurisdiction of the streets and bridges therein, and that they could not be subject to the control of two independent sets of officers. In *Clark v. Town of Epworth,* 56 Iowa, 462 it was held that the defendant was liable for a ditch which was dug by the road supervisor of the township in which the town was situated, and negligently left without barrier or signal to indicate danger. It was said that the statute which authorized township trustees to divide their townships into such number of highway district as they might deem necessary for the public good was broad enough to confer upon the trustees unrestricted control over the establishment of highway districts in their townships; yet it was held that the power granted to cities and incorporated towns over their streets, including the power to grade and keep them in repair, was inconsistent with any

right on the part of the township officers to exercise control of the streets. That case was based in part upon *Marks v. Woodbury County,* 47 Iowa, 452, on which the appellee especially relies. That case involved the validity of a road tax levied by the trustees of the township of Sioux City upon real estate within that township, which was also within the city of Sioux City, and the interpretation of that portion of section 969 of the Code of 1873 relating to the powers of township trustees to levy road taxes, which was as follows: "At the April meeting said trustees shall determine upon the amount of property tax to be levied for highways, bridges, guide boards, plows, scrapers, tools and machinery adapted to the construction and repair of highways, and for the payment of any indebtedness previously incurred for highway purposes, and levy the same, which shall not be less than one nor more than five mills on the dollar on the amount of the township assessment for that year." It was argued that the tax was to be levied upon the township assessment, which included the assessment for the whole township, but this court held that such was not the purpose of the statute; that it was not designed to point out the property upon which the tax was to be levied, but that it meant that the tax should not be less than one nor more than five mills on the dollar on the amount of the township assessment for the year for which the levy was made, or, in other words, to designate the assessed valuation upon which the tax should be levied. It was said, in effect, that the property to be taxed must be ascertained from other provisions of the law, which were referred to; that township trustees were not authorized to include a city within their township, in a road district; and that, although it was the duty of a road supervisor to collect and expend the road tax within his district, he was not authorized to collect or expend it within a city. The conclusion was reached that the power of the trustees to levy a tax extended only to property within the territory over which they had jurisdiction for road purposes. It may be regarded as established that, under the law as it existed when the levy in question was made, town-

ship officers had no jurisdiction of the streets of cities and towns within their respective townships, and no authority to levy or collect road taxes on property within such corporations. A careful analysis of the two statutes shows that there is a difference between the meaning and legal effect of section 969 of the Code of 1873 and the statute in question, in regard to the assessment upon which the taxes for which they provide shall be levied. The language of section 969 is that the tax shall be levied "on the amount of the township assessment," and the language of the act in question is that the board of supervisors shall "levy a tax of not more than one mill on the dollar of the assessed value of the taxable property in their county." We are of the opinion that the phrase, "of the taxable property in their county," enlarges the scope of the words preceding, and that the language of the section is sufficiently comprehensive to include all of the property of the county which is taxable when the levy is made. It is precisely the same, in legal effect, as was the corresponding provision of section 796 of the Code of 1873, in regard to the levying of taxes for state revenue, for support of schools, and for making and repairing bridges, which required the board of supervisors of each county to levy taxes for the purposes specified "upon the assessed value of the taxable property in the county." There is not the slightest ground for claiming that any of the taxable property in any county was exempt from taxation for the purposes designated in that section, and it is clear that all taxable property was intended to be so taxed. Hence the use of language in the statute in question having precisely the same meaning is very satisfactory evidence that the general assembly intended to make all taxable property in a county, whether within or without its cities and towns, subject to taxation for the county road fund. It is well settled that counties may construct, or aid in constructing, bridges within the limits of cities and incorporated towns. *Oskaloosa Steam-Engine Works v. Pottawattamie County,* 72 Iowa, 134; *Bell v. Foutch,* 21 Iowa, 119; *Barrett v. Brooks,* 21 Iowa, 144; Code 1873, section

527. It is suggested that the use of the word "taxable" in the statute in question indicates a legislative intent not to authorize the taxing of all property within a county for the benefit of the county road fund, and therefore it may be presumed that the property within cities and incorporated towns was intended to be exempt from taxation for that purpose. But the word is used in the same connection and with the same force that it was used in section 796 of the Code of 1873, and means no more than that the taxes provided for shall not be levied upon property exempt from taxation, as property of the United States and of this state, property of a county, township, city, incorporated town, or school district, when devoted entirely to the public use and not held for pecuniary profit, and other classes of property which were by law exempt from taxation. See section 797 of the Code of 1873, as amended.

II. It is insisted that the tax in question is not valid because no part of it can be expended in the city and towns within which the property sought to be taxed is situated. The law has been stated to be that: "The burden of a tax must be made to rest upon the state at large, or upon any particular district of the state, according as the purpose for which it is levied is of general concern to the whole state, or, on the other hand, pertains only to the particular district. A state purpose must be accomplished by state taxation, a county purpose by county taxation, or a public purpose for any inferior district by taxation of such district. This is not only just, but it is essential." Cooley Taxation, 141. The same author also states that: "There are same cases in which the character of a proposed public expenditure is such that there may be a difference of opinion as to the propriety or justice of its being provided for by a small district, or a larger one. Cases of highways afford an illustration. In many of the states the cost of these is usually borne by the towns, and it is not surprising to find a general impression prevailing in some quarters that the towns must always, and ought always to, bear it. But there is probably no state that does not pro-

vide for highways of more general importance than the ordinary townways,—highways that are very properly called and treated as state or county roads, and which are made and kept in repair by an expenditure of state or county money.   In such a case the state or county is the proper taxing district, and the town will not be taxed for the purpose of the road, except as a part of the larger district to which it belongs.   The state or the county might possibly be the proper taxing district, even though the work were wholly within the town; the importance and cost of the work, and not its locality, being in many cases the controlling consideration.   In all such cases legislation must determine what the district shall be." Cooley Taxation, 144.   The general assembly of this state has deemed it proper to make each county a district for the purpose of obtaining a county road fund.   No doubt, the purpose was to enable the board of supervisors to make improvements in the highways within its county which could not be made with the township funds available for the purpose, and a discretion as to the improvements which should be made was vested in the board.   Whether it be true, as claimed by the appellant, that a part of the tax may, with the concurrence of the proper authorities, be expended in the cities and incorporated towns of the county, we do not find it necessary to determine; for, if it be conceded that no part of the tax could be so expended, that fact would not make the tax on property within such corporations void.   Good highways are of general benefit, not only to the territory through which they pass, but to the inhabitants of cities and towns, by facilitating travel, and thus promoting intercourse and trade.   That fact is well known, and was recognized by chapter 52 of the Acts of the Eighteenth General Assembly, which permitted the expenditure in certain cases of a portion of the highway taxes of cities and incorporated towns to aid in the construction and repair of highways outside, and within three miles, of their corporate limits.   A provision of a similar character is found in section 899 of the Code of 1897.   Whether, in the enactment of the statute in question, the general assembly adopted

the means best calculated to secure good roads and do justice between the different parts of each county is a question of public policy, which we are not authorized to determine. It is enough to say that the taxing district for the purposes of the county road fund is the county, and that all taxable property in the county, whether within or without cities and incorporated towns, is subject to taxation for the benefit of that fund. It follows from what we have said that the demurrer filed in this case should have been sustained, and the judgment of the district court is therefore REVERSED.