# EDWARD P. ALEXANDER v. NEIL McINNIS and Others.[1]

March 19, 1915.

Nos. 19,212—(306).

**State Rural Highway Act — issue of bonds.**

In an action to enjoin the issuance of bonds for the construction of a state rural highway, pursuant to Laws 1911, c. 254, known as the Elwell Law, it is *held:*

(1) That the law is not unconstitutional as conferring legislative powers upon the judiciary.

(2) That the law is not invalid because its provisions are so indefinite that a legislative intent, capable of ascertainment, is not expressed.

(3) That the law makes the county primarily liable for the cost and expense of construction of the highway; and that an issue of bonds for the cost of the whole construction is not invalid.

(4) That the law makes the county a taxing district; and the plaintiff, residing and having taxable property in a municipality within the county, is properly taxed for the cost of the highway.

(5) That an issue of bonds is not invalid because the law puts one-fourth of the cost on specially benefited property, one-fourth on the county, charging the county with the burden of financing the project, and one-half on the state, with a provision that the state may pay in 10 annual instalments, or when funds become available, without specifically charging either the state or the county with the payment of interest upon the state's one-half.

(6) It is not necessary that the viewers determine both special and general benefits; and it is enough that the special benefits exceed one-fourth of the cost of construction.

(7) The county is not limited in the issuance of bonds to the one-fourth to be paid by itself, or the one-fourth to come from local assessments, but may issue bonds sufficient to finance the whole construction including the one-half to be paid by the state.

(8) That the law is not invalid because no limit is placed upon expenditures and the issuance of bonds; and if the law is defective in this respect it is for legislative correction and is not of judicial cognizance.

(9) That the bonds may be issued serially.

(10) That the proposed bonds are valid general obligations of the county.

[1] Reported in 151 N. W. 899.

Action in the district court for St. Louis county against the county commissioners, county treasurer and county auditor of that county, to restrain them from executing and selling state rural highway bonds for the benefit of state rural highway No. 4. From an order, Fesler, J., sustaining defendants' demurrer to the complaint, plaintiff appealed. Affirmed.

*John H. Brigham,* for appellant.

*Ambrose Tighe* filed a brief in behalf of appellant.

*Charles E. Adams,* for respondent.

*Edward Lees* filed a brief in behalf of respondent.

DIBELL, C.

This action is brought to restrain the defendants, who are the commissioners, treasurer and auditor of St. Louis county, from issuing bonds for the construction of a state rural highway. The defendants demurred to the complaint. The demurrer was sustained. The plaintiff appeals from the order sustaining it.

The plaintiff is a property owner and a taxpayer in the city of Duluth. The state rural highway, for which it is proposed to issue bonds, is wholly within St. Louis county. The plaintiff owns no land specially benefited by the highway.

The statutory authority for the construction of state rural highways is Laws 1911, p. 352, c. 254, commonly known as the Elwell Law. This law adopts by reference the procedural features of the drainage act as embodied in sections 3 to 52 inclusive of Laws 1905, p. 303, c. 230, "so far as the same may be made applicable to the laying out, improving and construction of highways and the raising of money therefor and to the assessment of benefits and the payment of damages, if any, incident to such construction or improvement," other than a few provisions expressly excepted.

The formal proceedings taken by the county officials are regular. The questions raised are upon the validity of the act, either the whole of it or parts of it.

1. It is objected that the highway act is unconstitutional as conferring legislative powers upon the judiciary.

Section 1 provides that highways may be laid out and constructed

by county boards when they are wholly within a county and by the district court when they extend into more than one county. The highway involved is wholly within St. Louis county; but the contention is that the conferring of authority upon the district court, when the highway is in more than one county, makes the act wholly unconstitutional.

The principal provisions of the drainage law (Laws 1905, p. 303, c. 230), which are adopted by the highway law, and which are applicable to the duties of the district court when the highway is in more than one county, are found in sections 27 to 34 inclusive. In the case of a judicial ditch the petition is filed with the clerk of the court instead of with the auditor. It is substantially true that the clerk and the civil engineer in charge, instead of the auditor and the engineer, attend to the preliminary work. The proceeding reaches the court in substantially the same form as it reaches the county board under section 10 of the drainage act when the ditch is in one county. An examination of this section shows that the duties cast upon the county commissioners are largely judicial; and as to some of them an appeal to the district court is given.

In State v. Crosby, 92 Minn. 176, 99 N. W. 636, the court held an act of the legislature authorizing the district court to provide for the construction of ditches to drain wet and overflowed lands, where the same extended into two or more counties, under Laws 1902, p. 90, c. 38, was not unconstitutional as conferring legislative powers upon the judicial department of the state. In that case Justice Brown, the present Chief Justice, in considering the question presented, said (at page 180):

"The marked tendency of legislation in recent years, not only in this state, but in other states, has been, to a large degree, to break away from the theory of three separate and independent departments of government, by imposing upon other departments duties and powers of a legislative character, which the courts have been inclined to sustain. Perhaps few, if any, cases are to be found, however, where statutes imposing purely legislative duties and powers upon the courts have been upheld; but the authorities are numerous, sustaining statutes which impose upon the courts powers involving

the exercise of both judicial and legislative functions—such as the condemnation of land for public purposes, the appointment of commissioners of election in proceedings for adding territory to municipal corporations, and laying out and establishing highways. The proceedings provided for by the statute under consideration involve the exercise of both legislative and judicial powers. The question of the propriety or necessity of public ditches to drain marshy or overflowed lands is one of legislative character. The condemnation of land through which such ditches may be constructed, the assessment of damages, and the determination of the legal rights of parties affected are judicial. The exercise of all these powers is involved in proceedings under this statute.

"The power and authority to lay out and open public highways is legislative in its nature and essentials, and in no sense except in some details is it judicial. Yet we have sustained legislation providing for the laying out and opening of so-called judicial highways; statutes conferring upon the district courts of the state authority to lay out and open highways where they extend into two or more counties. State v. Ensign, 55 Minn. 278, 56 N. W. 1006; State v. McDonald, 26 Minn. 445, 4 N. W. 1107. If a statute of that nature be within constitutional limitations and valid, and it was sustained in the cases cited, no reason occurs to us why a statute conferring upon the district courts power to lay out and establish ditches and drains should not also be held valid. Though the power and authority in each case is legislative in character, in carrying out and applying the statute the exercise of judicial functions is also involved. No distinction can be made between the judicial highway and the judicial ditch constructed for the purpose of draining, for the public benefit and welfare, marshy or overflowed lands. There being no logical distinction, the statute under consideration must be sustained, or we must overrule the cases just cited."

The language used is applicable to the case before us and controls it; and we hold that the act is not unconstitutional as conferring legislative powers upon the judiciary.

2. It is claimed that the highway law is so uncertain in its provisions that it is void.

It is a crude piece of legislation. The adoption of the procedural provisions of the drainage statute—a statute having differences as well as likenesses—has resulted in difficulties of administration. It is true, as stated in State v. Reusswig, 110 Minn. 473, 126 N. W. 279, that a statute is not valid unless there is a competent expression of legislative will and that judicial interpretation cannot be allowed to usurp the place of legislative enactment. It is equally true that it is the duty of public officials to administer a law, though it involves difficulties, and of courts to construe it and give effect to legislative enactment when the legislative intent can be found. The courts seek to give a construction which will make a statute operative. As is said by one of counsel, this court in Murray v. Smith, 117 Minn. 490, 136 N. W. 5, 40 L.R.A. (N.S.) 173, Ann. Cas. 1913D, 548, and Benton v. County of Hennepin, 125 Minn. 325, 146 N. W. 1110, treated this act as a substantial piece of legislation of operative practicability. This is our present view of it.

3. It is claimed that the issue of bonds is invalid because the county which is charged with the payment of one-fourth of the cost makes itself primarily liable for the whole of the cost.

Clearly enough the highway law makes the county primarily liable for the whole cost. Section 4 expressly provides that "the county, or counties, in which any state rural highway shall be constructed or improved shall be liable primarily for all the expenses of such proceedings." The purpose to charge the county with primary liability is not open to question. Nor is there impropriety in it. In Van Pelt v. Bertilrud, 117 Minn. 50, 134 N. W. 226, Justice Holt, in considering the character of the bonds issued under the drainage act, held them direct and general obligations of the county, saying:

"The theory upon which drainage legislation rests is public utility and welfare. The interests of individuals are incidental and can never alone justify either changing or affecting property against the owner's consent, as may be done in establishing drains. It is to subserve a public purpose, and not private ends, that the law was enacted. With this in mind, it is not difficult to come to the

conclusion that the legislature intended that the county should be primarily and directly liable for the expense of establishing, constructing, and maintaining this public utility. And if the expense is paid by the county by the issue and sale of bonds, then the county should pledge its credit for the payment of such bonds."

4. The objection is made that the bonds issued must be redeemed by general taxation and that the plaintiff, a resident of Duluth, within the county, whose property is not specially benefited, will be required to contribute to the payment of the county's proportion.

There occurs to us no reason why he should not. The fixing of the taxing district was within the reasonable discretion of the legislature. Maltby v. Tautges, 50 Minn. 248, 52 N. W. 858. The plaintiff is properly taxed for rural highways within the county. Love v. Town of Preston, 112 Minn. 459, 128 N. W. 673; Chicago, etc., R. Co. v. Murphy, 106 Iowa, 43, 75 N. W. 680; Smith v. Board, 173 Ind. 364, 90 N. E. 881; Perrizo v. Township, 141 Mich. 167, 104 N. W. 417.

The opposite of the contention here made was made in Murray v. Smith, 117 Minn. 490, 136 N. W. 5, 40 L.R.A.(N.S.) 173, Ann. Cas. 1913D, 548, where the contention was that all of the benefit was general and none local. There Justice Bunn said:

"The crucial question here is whether a rural highway is or may be a special benefit to neighboring lands, as distinguished from a general benefit to the public.   *   *   *

"The land of the farmer who is given a good road to market, where before he had a poor one, is certainly enhanced in value by the improvement. So is the land of every other owner who is thus given easy access to the cities or towns where he sells his produce and makes his purchases. The general public receive a benefit wholly different in character. The benefit to the motorist of the cities in having good roads for his pleasure runs is an example of the general benefit. Lands not in the territory reached by the highway, and whose owners cannot use it, receive no special benefit."

5. It is claimed that the issuance of bonds is invalid because, the state not paying its one-half at once, and it not being expressly

chargeable with interest, and the county being primarily liable on the bonds, the county will pay more than its one-fourth, because it will be required to pay the interest on the bonds representing the state's one-half.

Section 1 of the highway act provides that the expenses of a highway "shall be borne one-fourth by local assessment, one-fourth by the county, and one-half by the state." Section 3 provides that "one-fourth only of the cost of state rural highways shall be met by the assessment of lands or property therefor including that of corporations, municipal or private;" and it is further provided that "the state highway commission shall provide from any funds in its control a sum sufficient to meet one-half of the expense of such highway so established or ordered improved, and may direct that such sum be paid in ten annual instalments, or that it may be paid as soon as available." Section 7 provides that the state, in addition to the amount provided to be paid by it, or any county, town or municipal corporation in which the road is wholly or in part located, or any interested person, may contribute to the establishment and construction of such road by bearing a part of the burden otherwise falling upon any county, town or person.

As we have seen the primary burden of financing the project is put upon the county. It is intended that the county shall carry the assessments for local benefits. It may issue bonds therefor. It may provide by bonds for its own one-fourth. It may provide by bonds for the state's one-half, if the state chooses to pay in 10 equal instalments, or otherwise defers immediate payment.

In the respect now under consideration there are two, and perhaps but two, constructions of the act possible. One is that it was intended that the county should finance the project, bearing whatever loss came in the construction, such as there might be if not all local assessments were paid, or the expense of providing funds if the state should not pay all of its one-half at the beginning. Taking the act as a whole, charging the county with one-fourth and with the primary liability of financing the project, and charging the state with one-half with the privilege of paying in instalments, or otherwise deferring immediate payment, this construction is not without

reason.  While the act says that the county shall pay but one-fourth, it says that it shall furnish the money for all, and it says, further, that the state, if it chooses, may pay in instalments.  If it means that the county must carry the interest charge upon the state's one-half until it is paid—if that is the construction to be put upon the act as a whole—there is nothing invalid in it.  If by fair construction the legislature meant that, the act is just as valid as if plainer language had been used to express the legislative meaning.  One of the counsel in support of the validity of the bonds urges this view.

Another construction is that it was intended that the state, through the highway commission, should pay one-half of the ultimate cost, and if it took advantage of the provision for deferring its payments it would repay whatever interest charge might be incident thereto. This would result in a further appropriation and application from the state road and bridge fund.  This construction is urged by one of the counsel appearing in support of the validity of the bonds.

If either of these constructions is proper, the objection now under consideration is without merit.  If the legislature did not express an intent fairly justifying either construction it enacted a piece of legislation to which effect cannot be given, at least unless the state pays its proportion in cash; and, if use of the provision given the state for deferring payments were made, a highway never could be constructed, unless it proceeded as slowly as the payments came. Either of these constructions gives a valid piece of legislation.  In giving a construction we should seek one upholding the statute rather than one making it ineffective.  The duty of the court, in considering the validity of acts of the legislature, is well expressed by Ryan, C. J., in Attorney General v. City of Eau Claire, 37 Wis. 400, 438, and has had the approval of this court:

"It is our duty to give effect to all its enactments, according to its intention, as far as we have constitutional right and power.  And to that end it behooves us, as far as we are able, to place such a construction on statutes as will reconcile them to the Constitution, and to give them effective operation, under the Constitution, according to the intention with which they are passed.  It would be a pal-

pable violation of judicial duty and propriety to seek in a statute
a construction in conflict with the Constitution or with the object
of its enactment; or to admit such a construction when the statute
is fairly susceptible of another in accord with the Constitution and
the legislative intention."

In Benton v. County of Hennepin, 125 Minn. 325, 146 N. W.
1110, there was involved the construction of a highway costing
$100,000 and the amount in the state road and bridge fund to
the credit of the county was less than $2,000. It was urged that
since the county assumed a primary liability under section 4, which,
by reason of the insufficiency of the state funds to pay its one-half,
would result in the county paying more than one-fourth, the high-
way could not be constructed. In referring to this claim Justice
Philip E. Brown said:

"But the express terms of section 3 of the Elwell Law furnish
a complete answer to this contention; for, paralleling the provisions
of the drainage act relating to issuance of bonds, it authorizes the
highway commission to repay the county the state's share of the cost
'in ten annual instalments, or that it may be paid as soon as avail-
able.' The fact, therefore, that a county's annual allotment from
the state road and bridge fund may fall short of the share of
the cost to be borne by the state, is immaterial, unless there is some
inhibition against such a carrying over of the county's charge upon
the state fund as above indicated. * * *

"An order establishing a state rural highway and charging the
state with one-half of the cost, amounts merely to an appropriation
by the county board, under constitutional and statutory authority,
of such amount out of the state fund as it may be, or from year to
year may become, entitled to, for its own reimbursement to the
amount of its primary liability therefor. This is clearly authorized
by the act of 1911, and is contrary to neither constitutional limi-
tation nor subsequent statute."

If the state bears the interest, or if the county bears it, the bonds
are valid against the objection now made. One or the other bears
the interest, when bonds are issued, unless the act is meaningless.
We cannot hold it so; and the bonds are valid as against the objec-

tion under consideration. It is unnecessary for the purposes of this action, to determine what is the proper construction; and, in view of the absence from the action of parties who would be affected by a decision of the question, and who have not been heard, the impropriety of making it is apparent.

6. It is urged that the determination of both the general and special benefits should have been made by the viewers.

We see nothing in the point. The special benefits, as found by the viewers, exceeded the cost of construction. It was not necessary to find the amount of general benefits. It was only necessary that the special benefits exceeded the amount locally assessable, that is, one-fourth of the total cost of construction.

7. It is in a measure a repetition to state that the county may bond for the whole construction. That there may be no misunderstanding the right to bond may be restated. Section 4 of the highway act makes the county primarily liable for the expense of the construction; and section 18 of the drainage act, carried into the highway law by adoption, provides for the issuance and negotiation of bonds. The county is not limited, in issuing bonds, to the one-fourth to be paid by itself, or the one-fourth to come from local assessments. It may issue bonds sufficient to finance the whole construction including the one-half to be paid by the state. Of course if the state pays in cash, or the county has funds on hand properly applicable to its share, which it applies, the bonds are correspondingly reduced.

8. It is objected that no limit is placed upon the amount of expenditure which may be made by a county for roads or upon the amount of bonds which may be issued.

It may be a matter of serious consequence that expenditures may be made and bonds may be issued without limit. It does not affect the constitutionality of the act. It is a matter of policy for legislative determination and is not of judicial cognizance.

9. It is proposed to issue the bonds serially. This is the economical way of financing the construction. There is no statutory prohibition and the bonds may be so issued validly.

10. We reach the conclusion that the proposed bonds are valid and are general obligations of the county.

Order affirmed.

BROWN, C. J.

Section 3 of the statute involved in this case, known as the Elwell Law, imposes an absolute obligation on the part of the state to pay one-half of the cost and expense of a highway constructed under the law. It reads: "The state highway commission shall provide from any funds in its control a sum sufficient to meet one-half of the expense of such highway so established," and the state auditor is required to draw his warrant on the state treasury for the amount so ordered paid by the commission. While section 4 makes the county primarily liable for all costs and expenses of the highway, it seems clear that this declaration of general liability on the part of the county was not understood or intended by the legislature to include the one-half which, by section 3, was expressly imposed upon the state. The county was properly enough made the agency of the state to manage and conduct the highway proceedings and properly, too, charged with the duty of making all payments of the cost and expense of the improvement. All funds designed for the improvement, including the state's share, are paid into the county treasury, and from thence disbursed. But the statute does not provide that such expenses shall be paid from its own funds, but the clear intention was that they should be paid from the fund thus made up; one-half contributed by the state, one-fourth by the county, and the balance raised from special assessments. The county may undoubtedly raise its proportion, and the portion represented by the special assessment, by the issuance of bonds, but my view of the statute neither authorizes nor requires the issuance of bonds for the state's share, thereby to create an obligation upon the part of the general taxpayers for a debt the statute declares the state shall pay. No doubt the legislature could so provide, but they did not do so by this statute. In this particular case the cost of the proposed highway amounts to $150,000, of which the state is required to pay one-half, or $75,000. The county proposes to issue its bonds

for the whole amount. The bonds run for the period of ten years and the total interest on the share of the state, which the county thus obligates itself to pay, will amount to something like $25,000, depending upon the rate of interest, and this must be paid by the property owners of the county, many of whom reside remotely from the highway and derive no benefit therefrom. As just stated it was within the power of the legislature to so provide, and to so impose this debt upon the county at large, but the statute will be searched in vain for any legislative expression to that effect. In my view the question is one of purely legislative omission and should be cleared up by an amendment of the statute, rather than left to judicial conjecture and speculation.

I concur in the opinion in all other respects.