STATE EX REL. H. A. SKORDAHL v. S. A. FLAHERTY AND ANOTHER.

. STATE EX REL. COUNTY OF LAC QUI PARLE v. SAME.[1]

April 5, 1918.

Nos. 20,814, 20,815.

**Drainage and flood control act valid — delegation of legislative powers to the courts.**

1. Chapter 442, Laws 1917, authorizing the courts to organize drainage and flood control districts in river basins abutting upon or adjoining boundary waters and to appoint a board of directors to carry the purpose of the act into effect, is not unconstitutional because of an unwarranted delegation of legislative functions and powers to the judiciary.

**Same.**

2. Some objections on constitutional grounds to minor provisions of the law either do not affect the validity of the same as a whole or are plainly without merit.

Upon the relation of H. A. Skordahl and the county of Lac qui Parle the supreme court granted its writ of certiorari directed to the Honorable S. A. Flaherty, judge of the Sixteenth judicial district and the Honorable Richard T. Daly, one of the judges of the Twelfth judicial district, to review the proceedings for the organization of the Minnesota Valley Drainage and Flood Control District under Laws 1917, c. 442, and ordered that the petitions for the two writs be consolidated and the matter be heard upon one return. The respondents made return and prayed that the writs be dismissed or the action of respondents confirmed. Affirmed.

*N. F. Soderberg* and *A. W. Ewing,* for relators.
*Cliff & Purcell* and *A. B. Kaercher,* for respondents.

[1]Reported in 167 N. W. 122.

Holt, J.

These proceedings were instituted in the Twelfth and Sixteenth judicial districts to organize a drainage and flood control district, under chapter 442, p. 723, Laws of 1917, by filing petitions, in the form prescribed and containing the requisite number of qualified signers, in the office of the clerk of the district court in the counties of Big Stone, Swift and Lac qui Parle—the territory wherein the proposed district was to be established. Upon a hearing thereon before Judge Daly of the Twelfth district and Judge Flaherty of the Sixteenth, sitting together, an order was made establishing "The Minnesota Valley Drainage and Flood Control District" and appointing the board of directors, as directed by the act, to carry out the purpose for which such a district is created. Upon certiorari the action of the district court is sought to be annulled on the ground that the law under which the proceedings were taken is unconstitutional.

Our drainage laws have been productive not only of great public and private good, but also of extensive and serious evils because they have lacked features looking towards a control of the waters which the drainage work collects and discharges in destructive quantities. The crying need for the control of the waters so let loose by these public enterprises as to river basins abutting upon, or adjoining, boundary waters is so well known that no attempt need be made to seek out the purpose or to justify the enactment of chapter 442.

Only those objections raised to the constitutionality which threaten the validity of the act as an entirety will be considered. At this time it is deemed inexpedient to pass upon minor provisions not directly involved, or objections which are not raised by persons as yet aggrieved by these proceedings.

The main contention is that the organization of a drainage and control district can only be achieved by means of an unwarranted delegation of legislative and administrative powers to the judiciary, attempted to be granted by this law. The fundamental principle, which no one gainsays, is advanced that the establishment of political, governmental, or other subdivisions in a state is a purely legislative function which courts are prohibited from exercising. But, it is further argued, conceding that the decisions sustaining the constitutionality of the acts

for the establishment of judicial highways and of judicial ditches go far to sustain the validity of the law now challenged, still this law must fail under Brenke v. Borough of Belle Plaine, 105 Minn. 84, 117 N. W. 157, because the creation of the proposed district is left to the discretion of the court. True, section 1 begins with the clause: "Whenever it shall become necessary or expedient to facilitate or control drainage," etc.; but that merely leads up to the provision conferring the authority to establish a district when petitions are filed as specified in section 2 and the conditions required to be stated in the petitions are found to exist, among which are: That the proposed work "will be conducive to the public health, safety and convenience and promote the welfare of the inhabitants of said district; and aid in the control of flood waters in said boundary waters and streams or rivers flowing into or from the same in this state." When upon the hearing these facts or conditions are proven, and the other requisites of the petitions are as prescribed by said section, the court has no discretion—the district must then be organized.

Relators point to this clause in section 5 as the only guide for the court, viz., "that it shall appear that the purpose of the act would be subserved by the creation of a drainage * * * district," and asserts that the determination is thereby left wholly to the court's view of expediency and public policy, thus invading a purely legislative field. State v. Simons, 32 Minn. 540, 21 N. W. 750. We think the clause in section 5 refers back to the conditions above set out in section 2. The conditions or facts necessary to be found in order to create a drainage and control district are practically the same as those authorizing the creation of a judicial ditch territory. And the entire scope of chapter 442 involves the same matters of judicial controversies as do the general drainage statutes, namely, the assessment of damages and benefits under the right of eminent domain, and disputes growing out of the interference with private property for public purposes. The principles alluded to sustained the judicial ditch law, against the attack now made, in State v. Crosby, 92 Minn. 176, 99 N. W. 636, and State v. District Court of Norman County, 131 Minn. 43, 154 N. W. 617. Ever since State v. McDonald, 26 Minn. 445, 4 N. W. 1107, the act authorizing the establishment of judicial highways has been considered not obnoxious

to the charge that legislative power was conferred upon the court.  See also McGee v. Board of Co. Commrs. of Hennepin County, 84 Minn. 472, 88 N. W. 6 and State v. Bates, 96 Minn. 110, 104 N. W. 709, 113 Am. St. 612, where statutes were unsuccessfully assailed as having violated the Constitution by permitting the judiciary to usurp legislative functions.

It is undeniable that after the district is organized its board of directors exercises executive and administrative duties such as appointing officers, clerks, engineers, attorneys, etc., and superintending the improvements (section 7), entering into contracts (sections 9, 15, 18 and 29), instituting condemnation proceedings (sections 16 and 17), creating water powers, selling or leasing rights therein (sections 17, 18 and 19), imposing assessments and classifying lands for that purpose (sections 25 and 28); many of which acts require the approval of the court.  But the board and court proceed essentially as under the general drainage law, and in many matters under express direction of that law (sections 11, 17, 22 and 23), which has thus far withstood the charge that it violates constitutional provisions.

The whole act is also attacked because the court appoints the board of directors of the district and is given discretion to make the membership 3 or 5.  Foreman v. Board of Co. Commrs. of Hennepin County, 64 Minn. 371, 67 N. W. 207, and State v. Brill, 100 Minn. 499, 111 N. W. 294, 639, 10 Ann. Cas. 425, are cited as decisive of the proposition.

The first mentioned case is hardly in point here because the statute there involved assigned powers and duties to a probate judge beyond the limits to which the Constitution confined the jurisdiction of that court.  An exhaustive opinion by Justice Elliott in the last named case held invalid a law directing the judges of the district court of Ramsey county to appoint members of the board of control in the county.  But it is to be noted that that statute gave rise to the exercise of no judicial power whatever in connection with the appointment or operation of the law; and the opinion goes on to point out under what conditions statutes, such as were involved in the cases of McGee v. Board of Co. Commrs. of Hennepin County, supra, and State v. Cros-

by, supra, are sustained. The decision quotes with approval this language used in the McGee case:

"The precise line of cleavage between judicial and ministerial functions has never been, and never can be, definitely located. There are many duties which may be either the one or the other, depending upon the officer or body performing them, and the effect to be given to the action or determination of such officer or body. When duties of this ambiguous or equivocal nature are imposed upon a judicial officer or tribunal, to whom none but judicial duties can be constitutionally assigned, the doubt should be solved in favor of the validity of the statute * * * and the presumption indulged in that the legislature intended them to be performed in a judicial manner."

And from the Crosby case, where the present Chief Justice, after referring to the decisions sustaining the validity of the law establishing judicial highways against the same constitutional objections now urged, says: "If a statute of that nature be within constitutional limitations and valid * * * no reason occurs to us why a statute conferring upon the district courts power to lay out and establish ditches and drains should not also be held valid. Though the power and authority in each case is legislative in character, in carrying out and applying the statute the exercise of judicial functions is also involved."

In the judicial drainage act the provision for the appointment of engineers and viewers by the court did not render it unconstitutional, and it is not apparent why the appointment by the court of the members of the board of directors of a district created under chapter 442 should render that law unconstitutional. The fact that the court has the option of selecting either 3 or 5 members should not be held a sufficient cause for declaring the whole act void.

The objection is made that the statute assumes to interfere with navigable waters subject to the control of Congress, and of boundary waters over which the state of South Dakota has concurrent jurisdiction with our own. The answer is that there is nothing in the whole chapter looking to an interference with the navigability of the waters of the Minnesota river or its tributaries, if in fact such waters be navigable within the territory affected; and, further, provisions are made for securing the co-operation of the state of South Dakota in the matter

of the control of these waters. Such co-operation is also authorized by an act of Congress, approved August 8, 1917 (chapter 49, § 5, 1st Session, 65th Congress, 40 St. 266), evidently passed to facilitate the attempts of these two states to overcome the destruction wrought by the uncontrolled drainage in these boundary areas.

The means provided in the act for preliminary expenses, for the financing of the actual construction work, and for the maintenance fund are assailed as unconstitutional. The procedure for raising the funds for the actual work is substantially the one under the general drainage law, and we fail to see any constitutional weakness therein. As to the preliminary fund and the small maintenance fund, no arguments are presented against the validity of the method adopted for collecting the same, and in that situation it is best not to now pass upon their legality. It would involve minor details and only one or two sections of the law, the illegality of which would not overthrow the act as a whole. That the act throws a great burden upon the courts of the district may be admitted, but that is a matter for legislative redress. The judges here concerned are not complaining.

Other points suggested do not require extended discussion. The size of the district may well be limited by the facts found in respect to the territory affected by waters collected and necessary to control in order to prevent public and private injuries. The petitions contain all the formalities and allegations prescribed by the act. We do not discover wherein the proof fails to sustain all the essential allegations of the petitions, and have had our attention directed to no particular allegation as being unsubstantiated. It stands to reason that control of the tributaries may be necessary in order to secure control of the waters of the main stream. The law does not prescribe that the consent of the secretary of war must be obtained before the organization of the district. The court will take notice that the provisions of the general drainage law afford no relief against the evils which the act now under consideration attempts to remove. The amendments to the general drainage statutes contained in chapter 441, p. 692, Laws of 1917, do not take in boundary waters.

Order affirmed.