## In re Proposed Farm Drainage.

*February 9—March 8, 1932.*

For the appellants there was a brief by *Lockney & Lowry,* attorneys, and *Austin J. Baird* of counsel, all of Waukesha, and oral argument by *Henry Lockney.*

For the respondents there was a brief by *Salen & Brenner* of Waukesha, and oral argument by *L. L. Brenner.*

FAIRCHILD, J.  The finality of the objectors' petition provided for in sec. 88.075, Stats., is made to appear by a reading of the language used by the legislature.  This statute, as it was at the time when the circumstances occurred out of which this controversy arose, read:

"Whenever the owners of a majority of land in a farm 'drainage' or a majority of the owners owning one-third in area of such lands shall file with the county judge having jurisdiction of such drainage a petition requesting that no more work be done in and no more expense made against such drainage, the court shall order a hearing thereon, notice of which shall be posted in three public places on or in the immediate vicinity of the land included in the 'drainage' at least ten days before the date of hearing.  If on such hearing the court shall find that such petition is signed by the required number of owners and that notice of hearing was properly given it may enter an order directing that no more work be done in or expense created against such 'drainage.' "

By construction of this section the objectors are permitted to interpose their opposition to the "drainage" as soon as they are advised that the proceedings are under way and that their interests will be affected because of the inclusion of their lands therein.

The creation of a "drainage" calls into action a legislative function.  Proceedings to initiate enterprises of this sort must respond to constitutional requirements fixed by the legislature.  Objectors' privileges are likewise legislatively defined.  It is not a matter in which the court has power to exercise its discretion.  *In re Incorporation of North Milwaukee,* 93 Wis. 616, 67 N. W. 1033; *State ex rel. Skordahl v. Flaherty,* 140 Minn. 19, 167 N. W. 122; note 69 A. L. R. 266.

The court is limited to finding the existence of such facts as the legislature declares to be controlling.  When, upon the hearing of a petition, the controlling facts are shown to exist and the requirements which condition the right to stop

the "drainage" and prevent further work and expense are established, the court must make its order accordingly and the work and expense must stop.

The facts which control the action of the court in this case were established in the proceedings before the county court. The same matters were fully disclosed in the record upon the appeal to the circuit court. The county court was of the opinion that the objectors were not entitled to their relief because, as it held, the petition was prematurely made. This was error, as the circuit court concluded when by its order it gave the force and effect to the objectors' petition which the legislature provided it should have.

The matter of the collection of expenses incurred in the proceedings for "drainage" up to the time of the stopping of the work and expense is provided for in sub. (2) and (3) of sec. 88.075, Stats. After the entry of the order by the court it becomes the duty of the county clerk to certify to the town, village, or city clerk the amount of taxes to be by them collected for the purpose of paying any indebtedness of such "drainage," with the names of the persons from whom the same is to be collected, and such persons are to be liable for all debts existing against the "drainage" at the time of the entry of the order.

*By the Court.*—The order of the circuit court is affirmed.

NELSON, J. (*dissenting*). In view of the fact that the 1931 legislature so materially amended sec. 88.075, Stats., a dissenting opinion may serve no useful purpose. The remedy now provided by sec. 88.075 can only be invoked by "the owners of land who represent more than a majority of the confirmed benefits in a farm 'drainage.'" However, I feel that the court has wholly misconstrued both the language and the purpose of sec. 88.075 as it existed prior to its recent amendment, and because of this conclusion I cannot refrain from expressing my views.

It is perfectly clear that a "drainage" may be initiated under sec. 88.05, Stats., by either (1) the owner or owners of a majority of such lands, (2) a majority of the owners having one-third in area of such lands, (3) a majority of the county board in which such lands are situated, or (4) a majority of the town board or boards of supervisors of the town or towns in which such lands are situated; and that when the "drainage" has been so initiated by filing a proper petition, the judge shall, by order, refer the same to the board and direct it to report thereon as provided by law. Sec. 88.06, Stats. To hold that a proper petition under sec. 88.05 may be nullified by filing with the judge a petition by either "the owners of a majority of land in a farm 'drainage,' or a majority of the owners owning one-third in area of such lands," seems to me to result in a most incongruous situation, and one which the legislature never intended. So to construe sec. 88.075 is to render quite ineffective sec. 88.05, which provides the initial step in the organization of a farm drainage. The clear purpose of sec. 88.075, as I view it, is not to place in the hands of those objecting to the organization of a farm drainage an additional weapon which may be used with fatal results upon the "drainage" even before it has come into being. The construction placed upon this statute by the court renders it possible for either the owners of a majority of land, or a majority of the owners owning one-third in area in said lands, completely to stop the proceeding immediately when initiated by any of the other three groups mentioned in sec. 88.05. I do not think the legislature so intended.

The purpose of the statute, sec. 88.075, Stats. 1929, as I view it, was not to serve any such purpose, but was rather to provide opportunity for a hearing whenever the owners of a majority of the land in a "drainage," or a majority of the owners owning one-third in area of such lands, were

of the opinion that the "drainage" had either proved a failure or had proved satisfactorily sufficient, reasonably requiring in either event the doing of no more work or the making of no further expense.

For many years our laws have provided for farm drainage. In 1919 the then existing law was repealed and a new law was enacted. Ch. 446, Laws of 1919. Sec. 88.075, Stats., was not enacted by ch. 446, Laws of 1919, but was enacted by the legislature of 1925. Ch. 428, Laws of 1925, simply added to ch. 88 a new section giving "the owners of a majority of land in a farm 'drainage,' " or to "a majority of the owners owning one-third in area of such lands," the right to file a petition *"requesting that no more work be done in and no more expense made against such drainage."* I think it must be presumed that when sec. 88.075 was enacted many farm drainages existed in this state, some of them efficient, satisfactory, and beneficial, and some of them inefficient, unsatisfactory, and worthless. It seems to me that this statute was intended to give to those interested in a farm "drainage" the right to have a hearing, to present the facts and to state their objections, whereupon the court may, if he finds their contentions sound, stop further work and expense. When so viewed this section is in perfect harmony with sec. 88.05, and results in a logical scheme for both starting and stopping a farm "drainage."

In order to reach its conclusion the court must have concluded that the word "work" included the preliminary services of the board. I think that a reading of the entire farm-drainage chapter leads to the conclusion that "work" as used in sec. 88.075, Stats., refers to and can only mean the actual work involved in digging ditches or drains, cleaning them out, deepening them, or increasing their number and size. This, in my view, is the "work" that is meant by the statute when it provides that no more work be done.

Further development of the reasons for this dissent seems unnecessary.

In my opinion the county judge was right in holding that the petition to stop the work was prematurely filed, and the circuit court was wrong.

I am authorized to state that Mr. Justice OWEN and Mr. Justice WICKHEM concur in the foregoing dissent.